NO. 12-01-00248-CR



IN THE COURT OF APPEALS
 


TWELFTH COURT OF APPEALS DISTRICT



TYLER, TEXAS


JAMES EARL SADBERRY,
§
 APPEAL FROM THE 8TH

APPELLANT


V.
§
 JUDICIAL DISTRICT COURT OF


THE STATE OF TEXAS,

APPELLEE
§
 HOPKINS COUNTY, TEXAS

 

MEMORANDUM OPINION


 James Earl Sadberry ("Appellant") appeals his jury conviction for possession of a controlled
substance, cocaine, in an amount of four grams or more but less than 200 grams. In two issues,
Appellant asserts the trial court erred by denying his motion to suppress. We affirm.


Background

 On August 16, 2000, Officer Cleve "Buddy" Williams ("Williams"), a Sulphur Springs patrol
officer with the canine division, was on patrol traveling eastbound on Interstate 30. Williams was
driving a metallic dark blue police car with identifying decals along the sides of the vehicle but with
no overhead lights. At approximately 2:18 a.m., Williams observed a red Pontiac automobile pass
him on the inside lane of the interstate. The driver of the vehicle activated his turn signal and
changed lanes. He then abruptly exited the interstate, almost missing the off-ramp, but did not signal
until the vehicle was on the off-ramp. The officer characterized the exit as "evasive," dangerous
"[t]he way that he made the evasive move . . . almost passing the exit," and speculated that the driver
of the vehicle must be "either lost or maybe just missed their exit or almost missed their exit or was
trying to avoid me." He also testified that the driver may have been attempting to avoid him because
he was embroiled in criminal activity, but expressed that was "a hunch."

 Williams lost sight of the vehicle after it exited the interstate. He took the next exit and
waited in a restaurant parking lot near the service road. After he entered the parking lot, Williams
saw a vehicle pass him, traveling on the service road, that he believed was the same vehicle he had
seen on the interstate. He followed the vehicle to watch the driver for actions indicating he was
intoxicated or elusive or might be involved in criminal activity.

 As Williams followed the vehicle, he saw it cross the center stripe of the two-way service
road. Williams testified that the driver crossed the center stripe because he was "apparently"
watching Williams instead of the road. The vehicle eventually turned into a driveway leading to the
gate of a pasture, and Williams pulled in behind it and activated his emergency lights. Williams
approached Appellant, requested his driver's license, and, after Appellant asked, informed him that
he was stopped for crossing the center stripe on the service road and for the turn signal violation on
the exit ramp. Appellant responded that he had been trying to get back on the interstate. Williams
testified that Appellant's hands were trembling and his voice appeared to be shaky. In response to
questions regarding the purpose of his trip, Appellant told Williams that he had been to a baby
shower in Garland. When Williams asked if Appellant had any unpaid traffic citations or had ever
been arrested, Appellant said no.

 Williams returned to his vehicle and asked dispatch to run a security check on Appellant's
driver's license while he completed a warning citation for failing to maintain a single lane. A
security check disclosed that Appellant had a previous narcotics conviction. (1) Williams again
approached the vehicle, asked Appellant to step out of the car, had Appellant sign the warning
citation, and returned his driver's license. When Williams told Appellant that he knew he had been
arrested in the past, Appellant admitted a prior prison term, but not for narcotics. (2) At that point,
Williams asked for consent to search the vehicle, but Appellant refused. Williams decided to
conduct a canine sweep with his drug detection dog and told Appellant to stand away from the side
of the car. The canine alerted to the odor of narcotics at the driver's door seam next to the door
handle. Williams patted down Appellant, handcuffed him, and searched the vehicle. He found a
plastic bag containing a substance wrapped in cellophane which, based upon his field test, he
believed to be cocaine. Appellant was subsequently arrested and charged with possession of a
controlled substance, cocaine, in an amount of four grams or more but less than 200 grams, a second
degree felony. (3) The punishment range for the offense was enhanced to a first degree felony because
Appellant had a prior felony conviction for delivery of a controlled substance.

 Appellant filed a motion to suppress requesting suppression of any evidence seized by
Williams, including the cocaine, the arrest of Appellant and any evidence relating to the arrest, any
testimony by the Sulphur Springs Police Department concerning Appellant's actions or statements
while under detention or arrest, and any written or oral statements by Appellant to police officers in
connection with his case. After a hearing, the judge denied Appellant's motion. The jury found
Appellant guilty of possession of a controlled substance, cocaine, in an amount of four grams or
more but less than 200 grams and assessed punishment at imprisonment for forty-eight years and a
fine of $4,000.00. (4)


Standard of Review

 In reviewing a trial court's ruling on a motion to suppress, "the trial court is the sole trier of
fact and judge of the credibility of the witnesses and the weight to be given their testimony." State
v. Ross, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000). The appellate court should give "almost total
deference to a trial court's determination of the historical facts that the record supports especially
when the trial court's fact findings are based on an evaluation of credibility and demeanor." 
Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). A similar deference should be
accorded the trial court's rulings on "application of law to fact questions," also known as "mixed
questions of law and fact," if the resolution of those ultimate questions turns on an evaluation of
credibility and demeanor. Id. Any "mixed questions of law and fact" which do not rely upon an
assessment of credibility and demeanor should be reviewed de novo. Id. 

 A de novo review is proper when principal facts are not denied and nothing implies the trial
court did not accept that testimony because the trial court's ruling was consistent with the
uncontroverted testimony. Ross, 32 S.W.3d at 857-58. Williams was the only person to testify at
the suppression hearing and the trial court's ruling conformed to the officer's testimony. 
Accordingly, we give almost total deference to the trial court's resolution of historical facts and
review the application of the law of search and seizure de novo. See Carmouche v. State, 10 S.W.3d
323, 327 (Tex. Crim. App. 2000). If a trial court does not file findings of fact, we assume that the
trial court made implicit findings that support its ruling, so long as those implied findings are
supported by the record. Corbin v. State, 85 S.W.3d 272, 275-76 (Tex. Crim. App. 2002) (citing
Ross, 32 S.W.3d at 855). Here, the trial court did not make findings of fact, and we therefore review
the evidence in the light most favorable to the trial court's ruling. Carmouche, 10 S.W.3d at 327-28.


Initial Traffic Stop

 In his first issue, Appellant contends that the trial court erred in denying the motion to
suppress because Appellant's actions did not meet the requirements of Terry v. Ohio, 392 U.S. 1,
88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968). Therefore, Appellant argues, the initial stop was unjustified
and unreasonable. Additionally, Appellant asserts that the alleged traffic violations may not be
actual infringements of any statute. Finally, Appellant argues that the stop was a ploy for a drug
inquiry. The State responds that the facts reveal a valid stop and detention pursuant to Terry.

Applicable Law

 A police officer may lawfully stop and detain a person for a traffic violation. Garcia v. State,
827 S.W.2d 937, 944 (Tex. Crim. App. 1992); Armitage v. State, 637 S.W.2d 936, 939 (Tex. Crim.
App. 1982). Because temporary detention of an individual through an automobile stop is considered
a seizure, the stop is subject to a constitutional mandate "that it not be 'unreasonable' under the
circumstances." Whren v. United States, 517 U.S. 806, 809-10, 116 S. Ct. 1769, 1772, 135 L. Ed.
2d 89 (1996). The reasonableness of a seizure and search is determined by a "dual [inquiry]-whether
the officer's action was justified at its inception, and whether it was reasonably related in scope to
the circumstances which justified the interference in the first place." Terry, 392 U.S. at 19-20, 88
S. Ct. at 1879. These Terry principles apply to traffic stops. Richardson v. State, 39 S.W.3d 634,
637 (Tex. App.-Amarillo 2000, no pet.) (citing United States v. Brignoni-Ponce, 422 U.S. 873, 880-81, 95 S. Ct. 2574, 2580, 45 L. Ed. 2d 607 (1975)).

 Under the first inquiry, an investigative detention is warranted when the officer has
reasonable suspicion that some unusual activity is occurring or has occurred, that the detained person
is connected with the activity, and that the unusual activity is related to the commission of a crime. 
Gajewski v. State, 944 S.W.2d 450, 452 (Tex. App.-Houston [14th Dist.] 1997, no pet.) (citing
Hoag v. State, 728 S.W.2d 375, 378-80 (Tex. Crim. App. 1987)). We determine reasonableness
based on the totality of the circumstances using an objective standard. Powell v. State, 5 S.W.3d
369, 376 (Tex. App.-Texarkana 1999, pet. ref'd). We ascertain an officer's reasonableness by
asking whether, in light of the officer's experience and knowledge, there existed specific articulable
facts which, taken together with rational inferences from those facts, reasonably warranted the
intrusion. Id.

 Generally, if probable cause exists for the police to believe a traffic violation has transpired, 
the stop is reasonable. Whren, 517 U.S. at 810, 116 S. Ct. at 1772; Walter v. State, 28 S.W.3d 538,
542 (Tex. Crim. App. 2000). However, reasonable suspicion does not rise to the level of probable
cause such as is required to justify a warrantless arrest or search. Gajewski, 944 S.W.2d at 452. If
the officer has a reasonable basis for suspecting that a person has committed a traffic offense, the
officer may legally initiate a traffic stop. Powell, 5 S.W.3d at 376. Proof that a statute was violated
is not required. Drago v. State, 553 S.W.2d 375, 377 (Tex. Crim. App. 1977). A traffic stop is
justified, therefore, if the officer reasonably thought an infraction was in progress. Zervos v. State,
15 S.W.3d 146, 152 (Tex. App.-Texarkana 2000, pet. ref'd); Powell, 5 S.W.3d at 376-77.

Analysis

 At the time of the traffic stop and detention, Williams was a patrol officer for the Sulphur
Springs Police department's canine division, specifically working criminal patrol on Interstate 30. 
Williams had been a canine officer for approximately three years and an officer for the Sulphur
Springs Police department for seven years. He had also spent one year working with the Hopkins
County Sheriff's Tactical Narcotics Drug Task Force as an investigator and undercover officer. 
Williams testified that he stopped Appellant for the turn signal violation exiting the interstate and
for crossing the center line of the service road, and issued a warning citation for failing to maintain
a single lane. However, Appellant contends that the evidence is insufficient to establish any
violations. As previously stated, proof that a statute was violated is not required to determine
reasonable suspicion. Drago, 553 S.W.2d at 377. We therefore review the record before us to
determine whether Williams reasonably thought Appellant had committed a traffic offense. See
Zervos, 15 S.W.3d at 152; Powell, 5 S.W.3d at 376-77. However, our review of the stop in the case
at hand is not confined to the violation Williams cited during the stop. Singleton v. State, 91 S.W.3d
342, 347 (Tex. App.-Texarkana 2002, no pet.). 

 The Transportation Code requires a driver to drive on the right half of the road unless the
driver is passing another vehicle, there is an obstruction in the road, the road is divided into three
traffic lanes, or the road is a one-way road. Tex. Transp. Code Ann. § 545.051(a) (Vernon 1999). 
Williams testified, without contradiction, that during the time he followed Appellant on the service
road, he observed Appellant cross the center stripe. Appellant contends that because only the officer
and Appellant were traveling on the road, Appellant's actions were not unsafe and, thus, not a
violation of the Transportation Code. However, section 545.051 contains no language indicating that
crossing the center line is a violation only where the driver's action is unsafe. Consequently, we
conclude that Williams testified as to specific articulable facts leading him to believe Appellant
violated section 545.051. Because Williams reasonably believed that a traffic offense was occurring,
the traffic stop was justified. Therefore, we need not consider whether Williams reasonably believed
Appellant committed a turn violation on the interstate or failed to maintain a single lane.

 Finally, Appellant contends that the stop by Williams was a subterfuge for a drug
investigation. It is established that an officer's subjective intent is applicable only to a credibility
assessment of his stated reasons for stopping or arresting an individual. Garcia, 827 S.W.2d at 944. 
If, as here, the facts and circumstances show a valid and legal detention, the subjective reasons for
such detention are irrelevant. Garcia v. State, 43 S.W.3d 527, 530 (Tex. Crim. App. 2001). A
stop's legality is resolved by an objective examination of the facts and circumstances of the incident. 
Garcia 827 S.W.2d at 943. Thus, Appellant's argument is without merit. Because the stop was
justified based upon Williams's reasonable belief that a traffic violation occurred when Appellant
crossed the center stripe of the service road, Appellant's first issue is overruled.


Detention Leading to Arrest

 In his second issue, Appellant argues that the motion to suppress should have been granted
because Williams used the stop to conduct a "fishing expedition." Appellant contends that Williams
violated the scope of an investigative detention set forth by the United States Supreme Court and,
in order to justify a canine sweep, exploited the stop to investigate the likelihood Appellant had
drugs in his vehicle. The State argues that Williams's observations led him to a reasonable suspicion
of criminal conduct, warranting the canine sweep and subsequent search of Appellant's vehicle. 

Applicable Law

 In the second inquiry of Terry, the question is whether the officer's action was reasonably
related in scope to the circumstances which initially justified the interference. Terry, 392 U.S. at 19-20, 88 S. Ct. at 1879. To validate a particular intrusion, an officer must be able to attest to specific
and articulable facts, which, taken together with logical inferences from those facts, reasonably
warrant that intrusion. Terry, 392 U.S. at 21, 88 S. Ct. at 1880; Woods v. State, 956 S.W.2d 33, 38
(Tex. Crim. App. 1997). To resolve whether the officer's conduct was reasonable, due weight must
be given, "not to his inchoate and unparticularized suspicion or 'hunch,'" but to the specific
reasonable inferences which the officer may draw from the facts in view of his experience. Terry,
392 U.S. at 27, 88 S. Ct. at 1883. In other words, the scope of the detention must be carefully
tailored to its original justification. Florida v. Royer, 460 U.S. 491, 500, 103 S. Ct. 1319, 1325, 70
L. Ed. 2d 229 (1983).

 An investigatory stop must be "temporary" and continue only until the objective of the stop
is concluded. Id.; Davis v. State, 947 S.W.2d 240, 244 (Tex. Crim. App. 1997). When the purpose
of the stop has been completed, the stop may not be used as a "fishing expedition" for unrelated
criminal activity. Davis, 947 S.W.2d at 243. Likewise, the manner of investigation should be the
least disruptive means rationally available to dismiss or substantiate the officer's doubts. Royer, 460
U.S. at 500, 103 S. Ct. at 1325-26; Josey v. State, 981 S.W.2d 831, 841 (Tex. App.-Houston [14th 
Dist.] 1998, pet. ref'd). 

 When an individual rejects an officer's request for consent to search an automobile after a
stop, neither that person nor the vehicle may be further detained unless reasonable suspicion of some
criminal activity exists. Simpson v. State, 29 S.W.3d 324, 328 (Tex. App.-Houston [14th Dist.]
2000, pet. ref'd). The degree of suspicion necessary is less than that required for probable cause. 
United States v. Sokolow, 490 U.S. 1, 7, 109 S. Ct. 1581, 1585, 105 L. Ed. 2d 1 (1989). However,
the evidence must be of adequate probative force to support a reasonable suspicion of criminal
wrongdoing. Crockett v. State, 803 S.W.2d 308, 311 (Tex. Crim. App. 1991).

 After the traffic stop, an officer is permitted to rely on all of the information acquired during
the period of his contact with the individual in developing articulable facts to justify a continued
investigatory detention. Sims v. State, 2003 WL 139573, at *2 (Tex. App.-Houston [1st Dist.] Jan.
9, 2003, no pet. h.); Powell, 5 S.W.3d at 377; Ortiz v. State, 930 S.W.2d 849, 856 (Tex. App.-Tyler
1996, no pet.). When an initial detention is based on a traffic violation, various combinations of
factors will constitute a reasonable suspicion of criminal activity and permit continued detention or
further questioning unconnected to the traffic violation. Powell, 5 S.W.3d at 377.

 A canine sniff of a vehicle is not a "search" within the meaning of the Fourth Amendment.
United States v. Place, 462 U.S. 696, 707, 103 S. Ct. 2637, 2645, 77 L. Ed. 2d 110 (1983); Mohmed
v. State, 977 S.W.2d 624, 628 (Tex. App.-Fort Worth 1998, no pet.). Although the Supreme Court
has not firmly established that reasonable suspicion is required for a canine sniff, lower courts have
assumed such suspicion is mandatory. See Walter v. State, 28 S.W.3d 538, 542 (Tex. Crim. App.
2000). Temporarily detaining a vehicle for a canine sweep is not offensive to the Fourth Amendment
if based upon a reasonable suspicion that the vehicle contains narcotics. McQuarters v. State, 58
S.W.3d 250, 256 (Tex. App.-Fort Worth 2001, pet. ref'd); Estrada v. State, 30 S.W.3d 599, 603
(Tex. App.-Austin 2000, no pet.); Mohmed, 977 S.W.2d at 628. Further, the officer must have
reasonable suspicion before issuing a warning ticket to permit a continued detention in order to
conduct a search by consent or a canine sniff. McQuarters, 58 S.W.3d at 257.

Analysis

 When Appellant was stopped, Williams requested Appellant's driver's license, asked the
purpose of Appellant's trip, and inquired if Appellant had outstanding traffic citations or had ever
been arrested. Williams then requested dispatch to conduct a security check on Appellant's driver's
license while he wrote a warning citation. Appellant argues that, upon confirmation of a valid
driver's license and insurance and verification that he had no outstanding traffic warrants, the stop
was complete and further investigation by Williams violated the tenets of Terry. Therefore,
Appellant claims that Williams's other questions were an improper "fishing expedition."

 Inquiries regarding Appellant's driver's license, vehicle ownership, insurance information,
destination, and purpose of the trip are proper. Ortiz, 930 S.W.2d at 856; Zervos, 15 S.W.3d at 151. 
Further, because the stop's purpose was to investigate traffic violations, a warrant check by Williams
was reasonable. Powell, 5 S.W.3d at 377. Thus, Williams's initial investigation of the traffic
violation was proper. 

 Appellant next contends that, upon a check of Appellant's driver's license, insurance papers,
and outstanding warrants, Williams was required to write a ticket or warning citation because the
purpose of the stop was complete. Instead, Appellant argues, Williams improperly continued his
"fishing expedition" and conducted a canine sniff. In support of his argument, Appellant cites Judge
Mansfield's concurring opinion in Davis v. State, 947 S.W.2d 240, 246-48 (Tex. Crim. App. 1997). 

 Although the facts in Davis did not rise to the level of reasonable suspicion, the court of
criminal appeals, including Judge Mansfield, acknowledged that a temporary detention may be
justified upon reasonable suspicion. Id. at 244. Likewise, other courts have upheld continued
detentions of traffic stops when an officer had reasonable suspicion of criminal activity based on his
training, experience, and knowledge. See, e.g., Powell, 5 S.W.3d at 378 (driver misstated arrest
history, driver and passenger made inconsistent statements of purpose and destination of trip,
passenger had a prior drug offense, and driver was nervous); Fields v. State, 932 S.W.2d 97, 105
(Tex. App.-Tyler 1996, pet. ref'd) (excessive speed of car, apparent extreme nervousness of driver,
driver's suspended license, accused's apparent possession of the vehicle, officer's knowledge that
accused had history of drug offenses, and driver's and accused's inconsistent versions of recent
activities); Ortiz, 930 S.W.2d at 856 (driver was observed weaving left, hitting the grassy median,
kicking up dirt and grass, and weaving inside his lane).

 Based on his training, knowledge, and experience, Williams testified that he suspected
Appellant was involved in criminal activity because of (1) his appearing to attempt to elude Williams
when he exited the interstate, (2) his crossing the center line of the service road because he was
apparently watching Williams, not the road, (3) his turn into the pasture entrance, (4) his shaky voice
and his trembling hands, (5) his explanation that he was trying to get back on the interstate although
he had previously passed two on-ramps, and (6) the fact that he lied about previous arrests. (5)
Additionally, Williams stated that the time of night and Appellant's direction of travel from the
Dallas area to Pittsburgh were suspicious because this was a known path for narcotics traffic.

 Appellant's path of travel and the time of night are neutral factors and will not support
reasonable suspicion. Veal v. State, 28 S.W.3d 832, 837 (Tex. App.-Beaumont 2000, pet. ref'd). 
However, we conclude that the remaining factors provided Williams with specific, articulable facts,
based on his knowledge, experience and training, together with rational inferences from those facts,
that reasonably warranted the continued detention and canine sniff. Terry, 392 U.S. at 21, 88 S. Ct.
at 1880. In sum, Williams had reasonable suspicion, prior to issuance of the citation, to believe that
Appellant was involved in a criminal activity and had narcotics in his automobile, justifying the
continued detention and canine sniff. See Powell, 5 S.W.3d at 378-79; Fields, 932 S.W.2d at 105;
Ortiz, 930 S.W.2d at 856. Accordingly, Appellant's second issue is overruled.


Conclusion

 Based upon our review of the record, we conclude that the trial court did not err in denying
Appellant's motion to suppress. Therefore, the judgment of the trial court is affirmed.


 SAM GRIFFITH 

 Justice

Opinion delivered March 12, 2003.

Panel consisted of Worthen, C.J., and Griffith, J.




(DO NOT PUBLISH)
1. The trial court suppressed the reference to the prior narcotics conviction, but allowed Williams to state
that his conversation with dispatch revealed an inconsistency with Appellant's version of his arrest history. 
2. It is unclear from the record whether the warning citation was issued before or after Williams questioned
Appellant regarding his misstatements of previous arrests. A redacted police videotape of the stop was offered as
evidence at trial but is not part of the appellate record. Further, the trial court suppressed references to Appellant's
admitting a prior arrest, but permitted Williams to testify that his information from dispatch and further
conversations with Appellant added to his suspicions.
3. Tex. Health & Safety Code Ann. § 481.115(d) (Vernon Supp. 2001).
4. Before enhancement, the punishment range for Appellant's second degree felony was imprisonment for a
period of not more than twenty years or less than two years, and a maximum fine of $10,000. Tex. Pen. Code Ann.
§ 12.33 (Vernon 1994). However, because the enhancement allegation was found to be true, Appellant was punished
for a first degree felony. Tex. Pen. Code Ann. § 12.42(b) (Vernon 2003). Thus, Appellant's punishment range
increased to imprisonment for a period of life or not more than ninety-nine years or less than five years, and a
maximum fine of $10,000. Tex. Pen. Code Ann. § 12.32 (Vernon 1994).
5. Because of the lack of clarity in the appellate record, we have assumed that Appellant's second
misrepresentation of his criminal record occurred after the warning ticket was written.