**Tomikio SIMS, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 01–02–00032–CR.**

Court of Appeals of Texas, Houston (1st Dist.).

Jan. 9, 2003.

Discretionary Review Refused May 21, 2003.

Paul Mewis, Houston, TX, for Appellant.

Eric Kugler, Assistant District Attorney of Harris County, Houston, TX, for Appellee.

Panel consists of Chief Justice RADACK and Justices NUCHIA and JENNINGS.

## OPINION

SHERRY RADACK, Chief Justice.

Appellant, Tomikio Sims, pleaded guilty to the offense of possession of marihuana,

weighing more than five pounds but less than 50 pounds, and the trial court deferred adjudication of his guilt and placed him on community supervision for three years. The trial court granted appellant permission to appeal her pretrial motion to suppress evidence, and, in a single point of error, appellant argues that the trial court erred in denying her motion.

We affirm.

### Facts

Texas Department of Public Safety Trooper Lilly testified at the hearing on appellant's motion to suppress that, on December 3, 2000, he saw appellant driving a car 63 miles per hour in a 55–mile–per–hour construction zone. Lilly turned on his patrol car's emergency lights and pursued appellant's car. As Lilly approached appellant's car, he noticed another car of the same model traveling behind appellant, moving in and out of the lanes of traffic without signaling and driving off the roadway in front of Lilly. Lilly stopped appellant and did not pursue the other car.

As Trooper Lilly walked up to appellant's car, she rolled her window down and Lilly smelled perfume or incense coming from inside her car. Lilly also noticed that appellant's hand was "shaking tremendously" as she gave him her driver's license. Lilly asked appellant to stand at the back of her car and told her that she would be given a warning. As they were walking to the rear of the car, Lilly saw a large amount of air fresheners on the backseat floorboard. Lilly stated that, in his experience, air fresheners were commonly used by narcotics smugglers to mask the odor of the narcotics. Lilly also determined that appellant was driving a rental car, but she was unable to produce the paperwork from the rental agreement. Lilly testified that narcotics smugglers often use rental cars instead of their own so that their own cars will not be subject to a forfeiture proceeding.

While standing behind appellant's car, Lilly asked appellant to step towards him to avoid being between her car and his patrol car, and she responded by lifting her hands in the air as if she were being placed under arrest. As Lilly talked to appellant, he noticed that she had "bug eyes," her face was quivering, and her voice cracked when she spoke. Appellant was very nervous and had to lean against a concrete guardrail because she was swaying slightly. Appellant was hesitant in answering Lilly's questions, and he believed that her explanation about where she had been was internally inconsistent.

Lilly gave appellant a warning citation and then asked permission to search her car. When appellant refused to give permission, Lilly called in a canine unit to have a trained narcotics-detection dog smell the outside of the car for the presence of narcotics. The canine unit arrived within 20 minutes after the warning citation had been issued, and the dog "alerted" to the odor of narcotics at the back of the car. Lilly and the canine officer then opened the trunk and found marihuana inside.

The trial court denied appellant's motion to suppress evidence.

### Discussion

In her sole point of error, appellant argues that the trial court erred in denying her motion to suppress because, after the lawful stop was made and the warning citation was issued, there was no reasonable suspicion to further detain her.

We give almost total deference to the trial court's findings of fact, and will review, de novo, the application of the law to those facts. *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex.Crim.App.2000). If

the trial court has not made specific findings of fact, we will assume that the trial court made findings of fact that are (1) supported by the record, and (2) support its conclusions. *Id.* at 328.

To justify an investigative detention, an officer must have reasonable suspicion, based on specific articulable facts that, in light of the officer's experience and general knowledge, lead the officer to a reasonable conclusion that criminal activity is underway and that the detained person is connected with the activity. *Perez v. State,* 818 S.W.2d 512, 516 (Tex.App.-Houston [1st Dist.] 1991, no pet.). We must review the totality of the circumstances of each case to see whether the officer had a particular and objective basis for having suspected wrongdoing. *United States v. Arvizu,* 534 U.S. 266, 273, 122 S.Ct. 744, 750, 151 L.Ed.2d 740 (2002). After making a stop for a traffic violation, an officer may rely on all of the facts ascertained during the course of his contact with a defendant to develop articulable facts that would justify a continued detention. *Powell v. State,* 5 S.W.3d 369, 377 (Tex.App.-Texarkana 1999, pet. ref'd).

A detention must last no longer than is necessary to satisfy the purpose of the stop. *Florida v. Royer,* 460 U.S. 491, 500, 103 S.Ct. 1319, 1325, 75 L.Ed.2d 229 (1983); *Davis v. State,* 947 S.W.2d 240, 245 (Tex.Crim.App.1997). The investigative methods employed should be the least intrusive means available to verify or dispel the officer's suspicion in a short period of time. *Perez,* 818 S.W.2d at 517. There is no rigid time limitation, and the propriety of the stop's duration is judged by assessing whether the police diligently pursued a means of investigation that was likely to dispel or confirm their suspicions quickly. *Id.* (citing *U.S. v. Sharpe,* 470 U.S. 675, 686, 105 S.Ct. 1568, 1575, 84 L.Ed.2d 605 (1985)).

Appellant does not contest the validity of the initial traffic stop. Rather, she argues that, after receiving the warning citation, there was not sufficient reasonable suspicion to further detain her. Appellant cites *Davis v. State* in support of the proposition that, after Lilly gave the warning citation, his suspicions were "obviously satisfied," and additional facts were needed to establish reasonable suspicion of criminal activity to further detain her. 947 S.W.2d 240 (Tex.Crim.App.1997). In *Davis,* officers pulled a defendant over on suspicion that he was driving while intoxicated. *Id.* at 245. There was no odor of drugs or alcohol emanating from the vehicle, and the defendant explained that he was tired, and not intoxicated. *Id.* The *Davis* court noted that the officers dispelled their suspicions that the defendant was intoxicated and that they did not have a reasonable suspicion of other criminal activity to further detain the defendant. *Id.* Appellant does not explain how Lilly's suspicions were dispelled, stating only that, after giving the warning ticket, Lilly's suspicions were "obviously satisfied." Here, unlike in *Davis,* Lilly's suspicions were not dispelled. We are unwilling to hold, as a matter of law, that an officer, who gives a warning citation to a person, cannot rely on previously ascertained facts to further detain a person when those facts provide the officer with reasonable suspicion of criminal activity.

Appellant also argues that, even if we do consider the facts ascertained before the warning citation was issued, Trooper Lilly had no reasonable suspicion of criminal activity to further detain her. Appellant likens this case to *Veal v. State.* 28 S.W.3d 832 (Tex.App.-Beaumont 2000, pet. ref'd). In *Veal,* an officer relied on five facts that he claimed provided him with reasonable suspicion of criminal activity:

(1) the defendant slowed down, but did not stop, and then slammed on his brakes, after the officer activated his emergency lights; (2) the defendant was wearing a dress shirt and necktie at 12:30 a.m.; (3) the defendant was returning from Houston, which is a main "source city" for drugs; (4) the defendant took several seconds to answer some of the officer's questions; and (5) the defendant was a lot more nervous than the average traffic violator. *Id.* at 836. The court found that factors two through four were "absolutely neutral as to any inference of involvement in drug trafficking." *Id.* The court found that factors one and five, even when combined, did not provide the officer with reasonable suspicion of criminal activity. *Id.*

Other courts of appeals have appeared to give greater weight to the existence of nervousness and inconsistent answers in evaluating whether there was reasonable suspicion of criminal activity to justify an investigative detention. *See Ortiz v. State,* 930 S.W.2d 849, 856 (Tex.App.-Tyler 1996, no writ). In *Ortiz,* the defendant did not make eye contact with the officers, took a long time to answer questions, was generally nervous, and gave vague answers about the work he did. *Id.* The court decided that, given the facts, the officers had reasonable suspicion of criminal activity to detain appellant while they waited for a canine unit to sniff the defendant's car. *Id.*

Appellant contends that the facts of this case are similar to those in *Veal,* and that here, as in *Veal,* Trooper Lilly had no reasonable suspicion of criminal activity to justify a continued detention. We disagree. First, Trooper Lilly testified that when he was pursuing appellant's car, there was another car of the same model as appellant's that was traveling in an erratic manner in front of Lilly, and it appeared as though it was trying to distract Lilly's attention from appellant. Second, appellant's car smelled of the "large amount" of air fresheners that were on the floorboard of the backseat, and Lilly testified it was his experience that narcotics smugglers commonly use air fresheners to mask the odor of narcotics. Third, appellant was extremely nervous. Lilly stated that her hand was "shaking tremendously" when she handed him her driver's license, her voice cracked, and her body swayed when she tried to stand. Fourth, as was the case in *Ortiz,* Lilly stated that appellant hesitated before she spoke and that he believed her explanation about where she had come from was internally inconsistent. Fifth, when Lilly asked appellant to step out from between the cars, "she put her hands up as if she was being placed under arrest." Finally, appellant was driving a rental car and was unable to provide the rental-agreement paperwork. Lilly stated that it was his experience that narcotics smugglers were more likely to use rental cars because they did not want to have their own cars seized.

While each of the above facts, alone, might not have given Trooper Lilly reasonable suspicion that appellant was engaged in criminal activity, we hold that, taken together, they provided Trooper Lilly with reasonable suspicion to temporarily detain appellant. *See Arvizu,* 534 U.S. at 273, 122 S.Ct. 744. We also note that in *Veal,* the court refused to consider three of the five facts relied upon by the officer because they "were absolutely neutral as to any inference of involvement in drug trafficking." *Veal,* 28 S.W.3d at 837. The Supreme Court, in *Arvizu,* has since informed us that courts should not engage in a "divide and conquer" analysis of the facts, but should instead look at the totality of the circumstances to see if an officer had developed reasonable suspicion. *See Arvizu,* 534 U.S. at 274, 122 S.Ct. at 751.

Appellant argues that *Arvizu* is inapplicable to this case and cites *Herrera v. State,* 80 S.W.3d 283 (Tex.App.-Texarkana 2002, no pet. h). In *Herrera,* the court noted that the stop in *Arvizu* was not a stop for a traffic violation, but was made based on reasonable suspicion. *Id.* at 291. The *Herrera* court held that the officer, after making the traffic stop, could not further detain the defendant without reasonable suspicion of criminal activity. *Id.* at 292. The court held that *Arvizu* was inapplicable, presumably because the officer in *Arvizu* was justified in detaining the defendant because the officer had reasonable suspicion to stop the defendant in the first place. *Id.* We do not interpret *Herrera* to hold that the "totality of the circumstances" test articulated in *Arvizu* is not applicable in cases when the initial stop was for a traffic violation.

Accordingly, we hold that the trial court did not err in denying appellant's motion to suppress evidence.

We overrule point of error one.

### Conclusion

We affirm the trial court's order deferring adjudication.