# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-06-00475-CR

**Jody Keith Chasteen, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF BURNET COUNTY, 33RD JUDICIAL DISTRICT
### NO. 31915, HONORABLE DANIEL H. MILLS, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Jody Keith Chasteen appeals his conviction for possession of methamphetamine in an amount less than one gram. *See* Tex. Health & Safety Code Ann. § 481.102(6) (West Supp. 2006), § 481.115(b) (West 2003). In a single issue, appellant contends that the trial court erred in denying his motion to suppress evidence because his detention was illegal and the arresting officer lacked probable cause to search his vehicle. Because the detention was supported by reasonable suspicion and the officer had probable cause to search appellant's vehicle, we affirm the judgment of conviction.

## BACKGROUND

On January 5, 2005, at approximately 10:30 p.m., Deputy Steve Koenning of the Burnet County Sheriff's Office was conducting a routine patrol in the Kingsland area of Burnet County when he encountered appellant at a roadside park on Highway F.M. 1431. A sign posted at

the park states that there is no parking allowed between 10:00 p.m. and 6:00 a.m.[1]  Koenning testified that he observed appellant's maroon Ranger pickup truck at the location with the engine off and no interior or exterior lights on.  There was no lighting at the park, and no other persons or vehicles were present at the location.

Koenning approached appellant, who was in the driver's seat, requested identification, and asked him what he was doing.  Appellant gave his name and driver's license number to the officer and explained that he was waiting for a girl to come from a nearby Kingsland motel.  As appellant began looking for his driver's license and insurance, Koenning observed two knives in the passenger seat:  one was a large type of pocket knife, and the other was a utility knife.  Appellant appeared to be searching for his billfold as he kept reaching in different locations.  When appellant reached in the vicinity of the knives a second time, Koenning asked him to exit the vehicle, seeking to distance appellant from the knives.  Appellant produced an insurance card but was unable to produce a driver's license.  Koenning contacted his dispatcher and requested a check on the identifying information that appellant had provided orally.  The officer testified that he requested a backup officer by radio and patted appellant down to check for weapons.

As Koenning conducted the pat-down search, he felt an object in the pocket of appellant's jacket.  After discovering the object but before removing it from the jacket, Koenning asked appellant what he had in his pocket.  Appellant told Koenning that it was a syringe.  Koenning asked him if he was diabetic.  Appellant explained that he used to do drugs and had forgotten to take the syringe out of his jacket.  After removing the syringe from appellant's pocket and advising

---

[1]  *See* Tex. Transp. Code Ann. § 545.302 (West Supp. 2006).

him that he was not under arrest, Koenning placed handcuffs on appellant as he waited for another deputy to arrive.

Koenning asked appellant if he could search the vehicle; appellant responded, "I'd rather that you didn't." Koenning then requested a canine unit, which arrived eighteen minutes after the initial encounter began. The dog alerted to the driver's door of the vehicle, and officers retrieved a clear plastic-type jar from the door pocket on the driver's door with the lid removed. The jar contained a powdery substance that later tested positive for methamphetamine. The lid to the jar was found on the driver's side floorboard underneath the steering wheel. Another syringe was located inside the vehicle behind the driver's seat.

Appellant was indicted for possession of methamphetamine. After appellant's motion to suppress the evidence seized following his detention was denied by the trial court,[2] he pleaded not guilty and proceeded to trial. A jury found appellant guilty.

**ANALYSIS**

Appellant contends that the trial court erred in denying his motion to suppress evidence obtained in violation of his rights under the United States and Texas Constitutions.[3] He

---

[2] The parties did not request and the trial court did not make findings of fact.

[3] Appellant claims that the trial court's denial of his motion violated his rights under article I, section 9 of the Texas Constitution and articles 38.22 and 38.23 of the Texas Code of Criminal Procedure. *See* Tex. Const. art. I, § 9; Tex. Code Crim. Proc. Ann. arts. 38.22-.23 (West 2005). Because appellant does not differentiate between his state and federal issues and does not assert that the Texas Constitution requires more than the Fourth Amendment, we will address them together. *See Heitman v. State*, 815 S.W.2d 681, 690 n.22 (Tex. Crim. App. 1991) (requiring separate authority and argument to distinguish state constitutional claims from federal claims or court may overrule issue as multifarious). Moreover, in regard to a temporary investigative stop of a vehicle, article I, section 9 of the Texas Constitution does not afford a more stringent standard than the

argues that his detention was illegal and the officer did not have probable cause to search his vehicle. Appellant does not challenge the sufficiency of the evidence.

When reviewing a trial court's decision on a motion to suppress, we apply a bifurcated standard of review, giving almost total deference to a trial court's determination of historical facts and reviewing the court's application of law *de novo*. *Maxwell v. State*, 73 S.W.3d 278, 281 (Tex. Crim. App. 2002); *Guzman v. State*, 955 S.W.2d 85, 88-89 (Tex. Crim. App. 1997). Where the trial court did not make explicit findings of historical facts, as here, we review the evidence in a light most favorable to the trial court's ruling and assume that the trial court made implicit findings of fact supported in the record. *Carmouche v. State*, 10 S.W.3d 323, 327-28 (Tex. Crim. App. 2000). The trial court is the sole judge of the credibility of the witnesses and their testimony. *Maxwell*, 73 S.W.3d at 281. Where the record does not reflect the trial court's legal theory for denying the motion to suppress evidence, the ruling must be affirmed if it is reasonably supported by the record and can be upheld on any valid theory of law applicable to the case. *State v. Steelman*, 93 S.W.3d 102, 107 (Tex. Crim. App. 2002).

An officer may conduct a brief investigative detention if he has a reasonable suspicion to believe that an individual is involved in criminal activity. *Carmouche*, 10 S.W.3d at 328. The reasonableness of a temporary detention must be examined in terms of the totality of the circumstances at its inception and will only be justified if the officer can point to specific articulable

---

Federal Constitution. *Rhodes v. State*, 945 S.W.2d 115, 117 (Tex. Crim. App. 1997). Therefore, if the stop and the subsequent actions of the officer are not in violation of the federal standard under *Terry v. Ohio*, 392 U.S. 1 (1968), they do not violate article I, section 9 of the Texas Constitution. *Rhodes*, 945 S.W.2d at 117.

facts that, when combined with rational inferences from those facts, would lead him to reasonably suspect that a specific person had engaged in or soon would be engaging in criminal activity. *Garcia v. State*, 43 S.W.3d 527, 530 (Tex. Crim. App. 2001). Reasonable suspicion to justify an investigative detention must be based on facts more substantial than an unparticularized suspicion or mere "hunch" of criminal activity. *Terry v. Ohio*, 392 U.S. 1, 27 (1968). There must be an objective basis for the stop. *Garcia*, 43 S.W.3d at 530. The subjective intent of the officer conducting the stop is irrelevant. *Id*.

The defendant in a criminal proceeding who alleges a Fourth Amendment violation bears the burden of producing some evidence that rebuts the presumption of proper police conduct. *Russell v. State*, 717 S.W.2d 7, 9 (Tex. Crim. App. 1986). Once the defendant has made a showing that a search or seizure occurred without a warrant, as the defendant did here, the burden is on the State to prove that the detention was nonetheless reasonable under the totality of the circumstances. *Amador v. State*, No. PD-0786-06, 2007 Tex. Crim. App. LEXIS 501, at *12 (Tex. Crim. App. Apr. 25, 2007); *Garcia*, 43 S.W.3d at 530; *see also Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005). We look only at those facts known to the officer at the inception of the stop—a stop or search unlawful at its inception may not be validated by subsequent events. *See Wong Sun v. United States*, 371 U.S. 471, 484 (1963). If an officer stops an individual based merely on a hunch that the individual is "up to no good," the fact that the hunch turns out to be correct does not retroactively validate the stop. *See id.*

An investigative detention is distinguishable from a consensual encounter, which does not infringe on a constitutional right and requires no justification. *Florida v. Royer*, 460 U.S. 491,

497-98 (1983). An officer without reasonable suspicion of criminal activity may question an individual during a consensual encounter, "[a]s long as the person to whom questions are put remains free to disregard the questions and walk away." *United States v. Mendenhall*, 446 U.S. 544, 554 (1980). However, an investigative detention occurs when a person's freedom of movement is restrained, either by physical force or a show of authority. An investigative detention constitutes a seizure and invokes constitutional safeguards. *Id*. at 553; *Johnson v. State*, 912 S.W.2d 227, 236 (Tex. Crim. App. 1995).

Under *Terry*, a temporary investigative detention—a Fourth Amendment seizure—is reasonable, and therefore constitutional, if the officer's action was justified at the detention's inception and the detention was reasonably related in scope to the circumstances that justified the interference in the first place. 392 U.S. at 19-20. For the officer's initial action to be justified under the first *Terry* prong, we ask whether there existed specific, articulable facts that, taken together with rational inferences from those facts, reasonably warranted that intrusion. *Id*. at 21.

A seizure that is reasonable at its inception may violate the Fourth Amendment by virtue of its excessive intensity and scope. *Davis v. State*, 947 S.W.2d 240, 243 (Tex. Crim. App. 1997). Thus, under the second *Terry* prong, an investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop. *See Royer*, 460 U.S. at 500. Once the reason for the stop has been satisfied, the stop may not be used as a "fishing expedition for unrelated criminal activity." *Davis*, 947 S.W.3d at 243 (quoting *Ohio v. Robinette*, 519 U.S. 33, 41 (1996) (Ginsberg, J., concurring)).

6

The scope of the seizure must be restricted to that necessary to fulfill the seizure's purpose. *Royer*, 460 U.S. at 500. "There is, however, no constitutional stopwatch on traffic stops. Instead, the relevant question in assessing whether a detention extends beyond a reasonable duration is 'whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly.'" *United States v. Brigham*, 382 F.3d 500, 511 (5th Cir. 2004) (en banc) (quoting *United States v. Sharpe*, 470 U.S. 675, 686 (1985)). An investigative detention "may last as long as is reasonably necessary to effectuate the purpose of the stop, including the resolution of reasonable suspicion, supported by articulable facts within the officer's professional judgment, that emerges during the stop." *Id.* at 512. The Supreme Court has expressly rejected placing a rigid limitation on investigative detentions. *Sharpe*, 470 U.S. at 685-86 (declining to establish a *per se* rule that a 20-minute detention is too long under *Terry*); *see also Kothe v. State*, 152 S.W.3d 54, 64-65 (Tex. Crim. App. 2004).

Once the initial investigation that is justified is concluded, the officer may no longer detain the driver, who must be permitted to leave. *Kothe*, 152 S.W.3d at 63-64. An officer may request consent to search a vehicle after the purpose of the detention has been accomplished, as long as the request is reasonable under the circumstances and the officer has not conveyed a message that compliance with the officer's request is required. *Leach v. State*, 35 S.W.3d 232, 235-36 (Tex. App.—Austin 2000, no pet.); *Simpson v. State*, 29 S.W.3d 324, 328 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd). But if consent is refused, the officer must have reasonable suspicion to continue to detain the person stopped. *Simpson*, 29 S.W.3d at 328.

A law enforcement officer may conduct a limited search of a suspect's outer clothing for weapons, even in the absence of probable cause, when the officer reasonably believes that the suspect is armed and dangerous. *Carmouche*, 10 S.W.3d at 329 (citing *Terry*, 392 U.S. at 27); *Davis v. State*, 829 S.W.2d 218, 220 (Tex. Crim. App. 1992). The purpose of this limited search is to allow the officer to pursue an investigation without fear of violence, not to discover evidence. *Carmouche*, 10 S.W.3d at 329. The officer need not be absolutely certain that an individual is armed; the issue is whether a reasonably prudent person would justifiably believe that his safety or that of others was in danger. *O'Hara v. State*, 27 S.W.3d 548, 551 (Tex. Crim. App. 2000). A frisk is justified when the officer can point to specific and articulable facts that reasonably lead him to conclude that the suspect might possess a weapon. *Carmouche*, 10 S.W.3d at 329. Under the "plain-feel" exception to the Fourth Amendment's warrant requirement, "if a police officer lawfully pats down a suspect's outer clothing and feels an object whose contour or mass makes its identity immediately apparent, there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons." *Id*. at 330 (quoting *Minnesota v. Dickerson*, 508 U.S. 366, 375 (1993)). If a protective frisk goes beyond what is necessary to determine if the suspect is armed, the frisk is no longer valid under *Terry* and its fruits will be suppressed. *Id.*

If, during a valid detention, the officer develops reasonable suspicion that the detainee is engaged in criminal activity, continued detention is justified. *See Davis*, 947 S.W.2d at 244. Additional facts and information discovered by an officer during a lawful detention may form the basis for a reasonable suspicion that another offense has been or is being committed. *Razo v. State*, 577 S.W.2d 709, 711 (Tex. Crim. App. [Panel Op.] 1979); *Powell v. State*, 5 S.W.3d 369, 377

8

(Tex. App.—Texarkana 1999, pet. ref'd). If the valid detention evolves into an investigative detention of other criminal activity (such as transporting illegal drugs) so that a canine sniff can take place, reasonable suspicion is required to prolong the detention. *Davis*, 947 S.W.2d at 243; *Hill v. State*, 135 S.W.3d 267, 269 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd). But even in the absence of reasonable suspicion, a sniff of the outside of a vehicle by a trained canine during a valid detention is not a search within the meaning of the Fourth Amendment. *Illinois v. Caballes*, 543 U.S. 405, 409 (2005).

This case is distinguishable from those in which a citizen is pulled over for a traffic violation. *See, e.g.*, *Corbin v. State*, 85 S.W.3d 272, 274-75 (Tex. Crim. App. 2002). Deputy Koenning did not initiate a stop. He approached the vehicle because it was unlawfully parked at an hour that violated the posted sign. As an initial matter, Koenning was entitled to approach and make the inquiry as he did. But this does not end our inquiry. Here, a seizure took place when Koenning observed the knives, instructed appellant to exit the vehicle, and appellant yielded to Koenning's show of authority.

Appellant does not dispute the validity of the initial encounter resulting from appellant's parking or curfew violation. He contends, however, that once Koenning requested appellant's identification and requested a warrants check that the officer was not justified in detaining him when the dispatcher reported back to Koenning that no warrants existed.

The additional information that Koenning learned as the events unfolded formed the basis for a continued detention and further investigation. Koenning approached a vehicle that was parked in violation of a posted curfew regulation, with no interior lights observable, and with the

9

engine off.[4] As appellant rummaged through "papers and other clutter" searching for his license, Koenning observed knives on the seat. Having viewed the knives, Koenning was entitled to inquire further, to distance appellant from the knives, and to conduct a pat-down for other weapons. In his testimony, both at the suppression hearing and at trial, Koenning articulated the facts that led him to ask appellant to exit the vehicle and to place him in handcuffs until another officer arrived. As Koenning waited for a backup officer to arrive, he observed appellant exhibiting nervousness and reaching into his pockets as he exited the vehicle. Given the late hour of the day and the secluded nature of the roadside park, Koenning testified, "[I]t was just for officer safety that I got him out of the vehicle so I could put more distance between him and the knives." Under the evidence and circumstances, we conclude that the trial court did not abuse its discretion in implicitly finding that the pat-down was for officer safety and was not unreasonable.

As Koenning conducted an external touching of appellant's clothing, he felt an object in appellant's pocket. In response to Koenning's inquiry as to what the object was, appellant answered that it was a syringe and that he used to do drugs and had forgotten to take the syringe out of his jacket. Appellant also volunteered that he was currently on parole for a previous drug conviction. As Koenning waited for a backup officer, he placed handcuffs on appellant. After

---

[4] At trial, Koenning also testified that appellant committed a further offense by failing to produce a valid driver's license. *See* Tex. Transp. Code Ann. § 521.025 (West 2007). Section 521.025 provides for a driver's license to be carried by the driver while operating a motor vehicle and exhibited upon demand by a peace officer. *Id.* § 521.025(a). "A peace officer may stop and detain a person operating a motor vehicle to determine if the person has a driver's license as required by this section." *Id.* § 521.025(b). On the facts of this case, Koenning had authority to request a driver's license. *See Meeks v. State*, 692 S.W.2d 504, 508 (Tex. Crim. App. 1985). Although appellant gave his name and a license number, he failed to produce or display a license.

appellant denied having anything illegal in the vehicle in response to Koenning's query, Koenning asked appellant for his consent to search the vehicle to which appellant replied, "I'd rather that you didn't." Koenning then requested a canine unit, which arrived from the Marble Falls Police Department within twenty minutes after the initial encounter between appellant and Koenning began. Having discovered the syringe during the pat-down and based on appellant's own statements about his prior drug use and conviction, Koenning was justified to further detain appellant and request a canine unit to further investigate.

Based on our review of the totality of the circumstances, in light of Koenning's experience and knowledge, we conclude that the trial court was justified in determining that Koenning had reasonable suspicion to prolong appellant's detention so that Koenning could request a canine unit to conduct an external sniff on appellant's car and that the detention was reasonable in its scope.

Courts must "consider the law enforcement purposes to be served by the stop as well as the time reasonably needed to effectuate those purposes." *Sharpe*, 470 U.S. at 685. Based on the record in this case—Koenning's diligence in the investigation and in requesting backup assistance—the twenty-minute wait for backup to arrive and the canine sniff to begin was not unreasonable. *See, e.g.*, *Sims v. State*, 98 S.W.3d 292, 294 (Tex. App.—Houston [1st Dist.] 2003, no pet.) (officer and driver waited twenty minutes for canine unit to arrive to conduct canine sniff); *see also Sharpe*, 470 U.S. at 686-88 (twenty-minute detention was reasonable); *but cf. United States v. Place*, 462 U.S. 696, 709-10 (1983) (ninety-minute detention of defendant's luggage was unreasonable when agents did not act diligently to minimize the delay). When the dog alerted to the

driver's door of appellant's vehicle, the officers had probable cause to search the vehicle for drug contraband, which they found.

**CONCLUSION**

Because the initial detention was no longer than was necessary to effectuate its purpose, the extension of the detention was supported by reasonable suspicion, and the officer had probable cause to search appellant's vehicle, the trial court did not err or abuse its discretion in denying appellant's motion to suppress. We overrule appellant's issue and affirm the judgment of conviction.

_____

Jan P. Patterson, Justice

Before Justices Patterson, Pemberton and Waldrop

Affirmed

Filed:   May 31, 2007

Do Not Publish

12