Opinion issued May 20, 2010



In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-08-00866-CR

———————————

JAMES ERSKIN, Appellant

V.

THE STATE OF
TEXAS, Appellee



 



 

On Appeal from the 262nd District
Court 

Harris County, Texas



Trial Court Case No. 1159979

 



 

MEMORANDUM OPINION

          After
the trial court denied his motion to suppress evidence, appellant James Erskin
pleaded guilty with an agreed recommendation to the offense of possession with
intent to deliver more than four grams and less than two hundred grams of
cocaine.  See Tex. Health & Safety
Code Ann. §§ 481.102(3)(D), 481.112(a), (d) (Vernon Supp. 2009).  Erskin also pleaded true to two enhancement
paragraphs, which alleged prior felony convictions for delivery of a controlled
substance and possession of a controlled substance.  In accordance with the plea bargain, the trial
court sentenced Erskin to confinement for 25 years in prison.  Although this is a plea-bargain case, the
trial court certified Erskin’s right to appeal matters raised by motion and
ruled upon before trial.  

In one issue, Erskin contends that
the trial court erred by denying his motion to suppress evidence.  We affirm.

Background

          At
approximately 1:50 a.m. on March 29, 2008, Officer J. Cooper, a patrol supervisor
with the Deer Park Police Department, saw Erskin speeding on Highway 225.  Although the posted speed limit was 65 miles
per hour, Cooper measured Erskin’s speed as 77 miles per hour using laser radar.  Cooper stopped the car, and as he approached,
he noticed that Erskin was staring intently into his rearview mirror.  Cooper told Erskin that he had been speeding
and asked for his driver’s license and vehicle registration.  When Erskin handed over his license, Cooper
noticed that Erskin’s hands were shaking. 
Erskin said that he had come from the north side of La Porte and was
going to visit his girlfriend.  At the
suppression hearing, Cooper testified that Erskin did not maintain eye contact,
was breathing heavily, and had a bead of sweat above his brow, despite the cool
weather.  Cooper smelled a strong aroma,
which he described as a “cover odor,” a combination of freshly sprayed cologne
and air freshener.  Cooper testified that
the scent was “overpowering enough to make you nauseous.”

          Cooper
testified that he called for backup because Erskin was “a good deal larger than
me” and because he thought Erskin’s behavior was “abnormal indicative of
criminal behavior.”  Cooper asked Erskin
to step outside the car, to prevent him from driving away, and Cooper called
dispatch to check Erskin’s driver’s license and vehicle registration.  Cooper continued to talk to Erskin while
awaiting backup.  He testified that Erskin
did not become less nervous; rather Erskin “was still very high end,” and his
demeanor “was indicative of a lot of stress.”  Cooper also testified that Erskin downplayed
his criminal history, initially saying he had not been in trouble for “many
years” and then explaining that it had actually been only four years.

          While
awaiting backup, Cooper learned that Erskin had no outstanding warrants.  Nevertheless, Cooper chose not to write a
citation until backup arrived.  He
explained, “That would have required that I got back into my patrol unit to get
my ticket book out, at least momentarily I would have taken my eyes off Mr. Erskin or otherwise exposing myself
to an off-balance situation to reach in and get my ticket book.  I chose not to do that so that I wouldn’t put
myself in a position to either be attacked or to allow somebody to flee on the
side of the road.  Essentially, it’s for
officer safety.”  

Officer E. Pereira arrived
approximately three minutes after Cooper’s call.  Cooper testified that he specifically called
for Pereira, with the K-9 unit, because Pereira ordinarily worked close to
Cooper’s location on Highway 225 at that time of night.  However, Pereira testified, “I’ve worked with
[Cooper] many times.  When he calls for,
when he usually calls for my services, I usually know he wants a K-9, an
exterior sniff.  He basically told me he
had a refusal, and he wanted to deploy my dog on the vehicle.”

When Pereira arrived, Cooper asked
for permission to search Erskin’s car, which Erskin denied.  Pereira’s narcotics-detecting dog sniffed the
exterior of Erskin’s car and alerted to the presence of narcotics.  Cooper searched the car and found 77.4 grams
of crack cocaine and 124.7 grams of powder cocaine in the center console.  Erskin was then arrested.  The entire traffic stop lasted approximately
nine and a half minutes.

Both officers testified at the
hearing on the motion to suppress.  Cooper
testified, “Based on the Defendant’s behavior, I felt there was criminal
activity afoot and continued to detain him, and continued with my investigation
at the roadside there, tried to expedite it as much as I could.  I believed that he was hiding something,
namely, criminal activity.”  Pereira
testified about the dog sniff and how his dog alerted to the presence of
narcotics in Erksin’s car.  At the
conclusion of the hearing, the trial court stated:

Based on the evidence that I
observed in the videotape that we’ve watched and listened to twice, as well as
the testimony of the officers, I find that the officer had a legal reason to
first initiate a traffic stop of Mr. Erskin, and then based on the totality of
the circumstances, including unusual strong odor of cologne permeating from the
car, the continued nervousness.  The fact
that he was sweating on a cool night. 
The fact that he was coming from an area known by this officer, who has
18 years’ experience with the Deer Park Police Department, that the north part
of La Porte is a high-crime area.  As
well as other circumstances that were not ambiguous that were testified to.

 

Erskin then pleaded guilty with an agreed
recommendation, and the trial court entered judgment consistent with the
plea-bargain.  The trial court later
issued findings of fact and conclusions of law. 
The trial court found:

1.       Officer J.D. Cooper
conducted a traffic stop of the defendant on March 29, 2008, in the 3800 block
of State Highway 225, Pasadena, Harris County, Texas, for the offense of
speeding.

2.       Officer J.D. Cooper
approached the vehicle and observed the defendant to be acting out of the
ordinary and abnormally nervous.

3.       Officer J.D. Cooper observed
the defendant shaking, breathing heavily, perspiring and avoiding eye contact.

4.       Officer J.D. Cooper detected
a heavy odor of cologne and air freshener coming from the defendant’s vehicle.

5.       The defendant was coming
from a high narcotics area.

6.       Officer J.D. Cooper
requested the defendant exit the vehicle. 


7.       Officer E.J. Pereira and his
K9 arrived on the scene as backup for officer safety.

8.       Officer J.D. Cooper
requested verbal consent to search the defendant’s vehicle.

9.       The defendant refused to
allow search of his vehicle.

10.  Officer E.J. Pereira used
his certified narcotics detection dog, Charly, to sniff the exterior of the
vehicle.

11.  Charly alerted to the
vehicle.

12.  The defendant stated there
was nothing in the vehicle.

13.  Officer J.D. Cooper
conducted a search of the vehicle and discovered 77.4 grams of crack cocaine
and 124.7 grams of powder cocaine in the center console within reach and
control of the defendant.

14.  Search incident to arrest
led to the discovery of $5621.00 of U.S. currency in the defendant’s rear pant
pocket.

15.  The entire stop was recorded
on car video and lasted 9.5 minutes.

          In
one issue, Erskin appeals the trial court’s denial of his motion to suppress,
arguing that Cooper illegally detained him until the arrival of the
drug-sniffing dog and conducted a warrantless search of his vehicle without
Erskin’s consent.

Standard of Review

In reviewing the trial court’s
ruling on a motion to suppress evidence, we apply a bifurcated standard of
review.  Carmouche v. State, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000); Blake v. State, 125 S.W.3d 717, 722
(Tex. App.—Houston [1st Dist.] 2003, no pet.).  We give almost total deference to the trial
court’s determination of historical facts that depend on credibility, while we
conduct a de novo review of the trial court’s application of the law to those
facts. Carmouche, 10 S.W.3d at 327.  In a hearing on a motion to suppress, the
trial court is the sole trier of fact and judge of the credibility of the
witnesses and the weight to be given their testimony.  State
v. Ross, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000).  “This is so because it is the trial court that
observes first hand the demeanor and appearance of a witness, as opposed to an
appellate court which can only read an impersonal record.”  Id.  We must sustain the trial court’s ruling if
it is reasonably supported by the record evidence and is correct under any
theory of law applicable to the case.  Ross, 32 S.W.3d at 855–56. 

Analysis

          In
his sole issue, appellant argues that the trial court erred in denying his
motion to suppress because the evidence in question was obtained during an
unlawful detention.  He claims that the
purpose of the traffic stop was effectuated when the computer check of his driver’s
license and vehicle registration was completed and that Cooper prolonged his
detention and searched his car without reasonable suspicion of criminal
activity. 

Initial Traffic
Stop Was Justified 

A traffic stop is a detention and,
therefore, must be reasonable.  Davis v. State, 947 S.W.2d 240, 244
(Tex. Crim. App. 1997); Magana v. State,
177 S.W.3d 670, 673 (Tex App—Houston [1st Dist.] 2005, no pet.).  To be reasonable, a traffic stop must have
been justified at its inception and not longer than necessary to effectuate the
purpose of the stop.  Florida v. Royer, 460 U.S. 491, 500, 103
S. Ct. 1319, 1325 (1983); Davis, 947
S.W.2d at 245; Magana, 177 S.W.3d at
673. 

The decision to stop an automobile
is reasonable when the police have probable cause to believe that a traffic
violation has occurred.  Whren v. United States, 517 U.S. 806,
810, 116 S. Ct. 1769, 1772 (1996); Walter
v. State, 28 S.W.3d 538, 542 (Tex. Crim. App. 2000); see also Tex. Transp. Code
Ann. § 543.001
(Vernon 1999) (“Any peace officer may arrest without warrant a person found
committing a violation of [the Rules of the Road].”); Tex. Code Crim. Proc. Ann. art 14.01(b) (Vernon 2005) (“A
peace officer may arrest an offender without a warrant for any offense
committed in his presence or within his view.”).  During a routine traffic stop, an officer may
detain an individual to check for outstanding warrants.  Walter,
28 S.W.3d at 542 (citing Davis, 947
S.W.2d at 245 n.6).  Cooper saw Erskin
speeding and measured his speed with laser radar, finding it in excess of the
posted speed limit.  Cooper had probable
cause to stop Erskin for a traffic violation. 
Therefore, the initial stop and the detention for the time it took to
check Erskin’s driver’s license and vehicle registration were lawful.

Trial
Court’s Finding Regarding Officer Safety is Supported by Record

Indeed, Erskin does not challenge
the initial traffic stop: Erskin contends that he was detained longer than
necessary to effectuate the purpose of the traffic stop.  Although Erskin does not contend generally that
officer safety is an insufficient reason to prolong a detention before issuance
of a citation, he does argue that Cooper was not actually concerned for his own
safety and that his prolonged detention of approximately three minutes was
without probable cause or reasonable suspicion.

          In making this argument, Erskin
relies on the differences in Cooper’s and Pereira’s testimony.  Cooper testified that he called Pereira for
backup to ensure his own safety, but Pereira testified that, usually, when
Cooper called him it was for the specific purpose of obtaining an “exterior
sniff” by a drug-sniffing dog.  In his
brief, Erskin argued, “Sergeant Cooper’s testimony again appears to have been
less than truthful when Officer Pereira admitted that other officers better
suited for ‘backup’ were available.” 
Thus, Erskin is essentially challenging the trial court’s finding of
fact that “Officer E.J. Pereira and his K9 arrived on the scene as backup for
officer safety.”  

As we have noted, we give almost
total deference to the trial court’s determination of historical facts that
depend on credibility.  Carmouche, 10 S.W.3d at 327.  Cooper testified that Erskin’s size and
behavior caused him to be concerned for his safety.  Cooper also testified that he knew Pereira
was closest to his location at that time of night.  The trial court found that Cooper called
Pereira for “officer safety.”  The trial
court’s finding of fact is supported by the testimony, and we may not conclude
otherwise based on our review of a cold appellate record.  Ross,
32 S.W.3d at 855.

In any case, “a police officer’s
subjective motive will never invalidate objectively justifiable behavior under
the Fourth Amendment,” and “subjective intentions play no role in an ordinary,
probable-cause Fourth Amendment analysis.” 
Walter, 28 S.W.3d at 542
(citing Whren, 517 U.S. at 812–13,
116 S. Ct. at 1774).  If it was
objectively reasonable for an officer to call for backup to ensure his safety, the
Fourth Amendment does not require us to inquire whether safety concerns were,
in fact, the officer’s subjective concern. 
Erskin does not challenge the objective reasonableness of calling for
backup during a traffic stop.

Reason for
Stop Not Effectuated Before Backup Arrived

Moreover, Erskin’s detention until Pereira’s
arrival was justified because Cooper had not yet effectuated the reason for the
stop.  Cooper testified that he intended
to write Erskin a citation for speeding, which he did not do before Pereira
arrived.  While a traffic stop may last
no longer than is reasonably necessary to effectuate the purpose of the stop,
there is no set time limit for accomplishing such a purpose.  “The propriety of the stop’s duration is
judged by assessing whether the police diligently pursued a means of
investigation that was likely to dispel or confirm their suspicions quickly.”  Sims v.
State, 98 S.W.3d 292, 295 (Tex. App.—Houston [1st Dist.] 2003, pet. ref’d).  The measures taken to investigate the offense
that prompted the traffic stop and the computer check need not be conducted in
any particular order.  Kothe v. State, 152 S.W.3d 54, 65 (Tex.
Crim. App. 2004).  In addition, during a
traffic stop, officers may take reasonable precautions to ensure their
safety.  See Pennsylvania v. Mimms,
434 U.S. 106, 109–11, 98 S. Ct. 330, 333 (1977) (holding that officer may ask
driver to step out of car if necessary to ensure officer’s safety); Balentine v. State, 71 S.W.3d 763, 771
(Tex. Crim. App. 2002) (holding that officer may handcuff driver and place him
in patrol car if necessary to ensure officer’s safety).

Here, Cooper testified that he
called for backup and for a routine check of Erskin’s driver’s license and
vehicle registration promptly upon initiating the traffic stop.  He was not required to issue Erskin a
citation for speeding before taking these actions.  See
Kothe, 152 S.W.3d at 65.  A
three-minute delay in writing the speeding citation in order to wait for backup
and thereby ensure officer safety did not “unduly prolong” the detention and
thus was not objectively unreasonable.  See Mimms, 434 U.S. at 109–11, 98 S. Ct.
at 333; Kothe, 152 S.W.3d at 65 &
n.43; Balentine, 71 S.W.3d at 771.

Reasonable Suspicion Existed to
Prolong Erskin’s Detention

Finally, even if the traffic stop
had concluded upon the return of information about Erskin’s driver’s license
and vehicle registration, his continued detention was lawful because Cooper had
developed reasonable suspicion of criminal activity.  See
Woods v. State, 956 S.W.2d 33, 35, 38
(Tex. Crim. App. 1997).  A temporary detention is reasonable if “the
detaining officer has specific articulable facts, which taken together with
rational inferences from those facts, lead him to conclude that the person
detained actually is, has been, or soon will be engaged in criminal
activity.”  Id. at 38.  Reasonable suspicion is determined based
on the totality of the circumstances and may arise during the course of a
traffic stop.  Id.; Sims, 98 S.W.3d at
295 (“After making a stop for a traffic violation, an officer may rely on all
of the facts ascertained during the course of his contact with a defendant to
develop articulable facts that would justify a continued detention.”).  However, there must be an objective basis for
the officer’s suspicion of criminal activity. 
Id. (citing United States v. Arvizu, 534 U.S. 266,
273, 122 S. Ct. 744, 750 (2002)). 

          The
trial court found that, during the traffic stop, Erskin was “acting out of the
ordinary and abnormally nervous,” shaking, breathing heavily, sweating in cool
weather, and avoiding eye contact.  The
trial court found that there was a heavy odor of cologne and air freshener
emanating from Erskin’s vehicle. 
Finally, the trial court found that Erskin was stopped while traveling
from an area known to Cooper for the prevalence of drug crime.  The trial court’s findings of fact are
supported by Cooper’s testimony.  We
conclude, as did the trial court, that considering the totality of
circumstances, these factors gave rise to reasonable suspicion sufficient to
justify Cooper’s three-minute detention of Erskin while awaiting a
drug-sniffing dog.  See Woods, 956 S.W.2d at 38; Sims,
98 S.W.3d at 295.

          Erskin
argues that none of these factors alone was enough to justify his detention.  See
Munera v. State, 965 S.W.2d 523, 531 (Tex. App.—Houston [14th Dist.] 1997,
pet. ref’d) (explaining that nervousness alone is not reasonable ground for
suspicion); Gurrola v. State, 877
S.W.2d 300, 303–04 (Tex. Crim. App. 1994) (holding that officers lacked
reasonable suspicion to detain and search appellant who walked away from
argument in parking lot of apartment complex in high crime area).  Erskin asserts that these factors are also
insufficient when considered together, because they are indistinguishable from
the conduct of innocent people.

In Woods, the Court of Criminal Appeals rejected such an analysis,
holding that “the ‘as consistent with innocent activity as with criminal
activity’ construct is no longer a viable test for determining reasonable
suspicion.”  Woods, 956 S.W.2d at 38.  The
Court of Criminal Appeals observed, “We recognize that there may be instances
when a person’s conduct viewed in a vacuum, appears purely innocent, yet when
viewed in light of the totality of the circumstances, those actions give rise
to reasonable suspicion.”  Id. 
In this case, Cooper did not encounter someone who was simply wearing
too much cologne, behaving nervously, or in the wrong place at the wrong
time.  Cooper encountered a person who
was traveling from a place known for drug crimes, behaving unusually nervously,
sweating in cool weather, and apparently attempting to conceal an odor in his
car through the use of cologne and air fresheners.  The totality of the circumstances gave rise
to a reasonable suspicion that Erskin was involved in criminal activity.  See id.  We hold that the trial court did not abuse
its discretion in denying Erskin’s motion to suppress, and we overrule Erskin’s
sole issue.

Conclusion

          We
affirm the judgment of the trial court.

 

 

 

                                                          Michael Massengale

                                                          Justice


 

Panel consists of Justices Keyes, Sharp, and
Massengale.

Do
not publish.   Tex. R. App. P. 47.2(b).