**Opinion issued December 30, 2014**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-13-00705-CR

_____

**MARIO SHANE ROWLAND, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 185th Criminal District Court
Harris County, Texas
Trial Court Case No. 1347277**

---

## MEMORANDUM OPINION

A jury convicted appellant Mario Rowland of possession of at least 400 grams of cocaine with intent to deliver. *See* TEX. HEALTH & SAFETY CODE §§ 481.102(3)(D); 481.112(a), (f). The jury assessed punishment at 26.5 years in prison and a $500 fine. On appeal, Rowland contends that the trial court abused its

discretion when it denied his motion to suppress evidence gathered from his car after he was stopped by the police. We affirm.

## Background

Houston Police Department Officer M. Sinegal, an undercover narcotics officer, began surveillance of a house after he was advised by a confidential informant that drugs were being sold there. Sinegal had worked with this particular informant several times, and on those occasions the informant's information proved correct.

Over a two-month surveillance investigation, Sinegal observed several people arriving at the residence and staying for 10 to 20 minutes before leaving, including one identified by the Drug Enforcement Agency as a drug-trafficking suspect. Sinegal's surveillance was directed at a particular "main target" and the individual identified by the DEA was suspected to be the main target's supplier.

In Sinegal's twelve years of experience, the pattern of observed activity was consistent with a narcotics trafficking. During the initial investigation, Sinegal did not make any arrests of people coming out of the house because he "didn't want to do something too soon that would . . . pretty much spook the house."

For reasons not explained in the record, on the day of Rowland's arrest, Sinegal decided to begin stopping and identifying certain individuals if the opportunity presented itself. While surveilling the house, Sinegal observed

Rowland arrive in a red minivan with Illinois license plates. To this point, Sinegal had never seen Rowland there and had not received a tip from the informant about him. Approximately 15 minutes after entering the house empty-handed, Rowland returned to the minivan carrying a brown paper bag, accompanied by another man carrying a box. The two men placed both items in the trunk, and Rowland drove away in the red minivan.

Sinegal followed, and when he saw the minivan making a left turn without its turn signal activated, he asked that it be stopped by a marked patrol unit. HPD Officer Curtis received the request and made the stop at approximately 4:50 p.m. Curtis asked for consent to search the vehicle, but Rowland refused and appeared nervous.

Approximately 35 minutes after the initial stop, Sinegal learned that Rowland refused consent to a search, and he called for a canine narcotics unit. The canine unit arrived at the scene at 6:22 p.m., nearly 90 minutes after the detention was initiated. Once at the scene, the dog alerted to the presence of narcotics within the minivan, and a subsequent search revealed nearly four kilograms of cocaine in the brown bag and box in the trunk.

Rowland was charged with possession of a controlled substance with intent to deliver. Following conviction by a jury, he was sentenced to 26.5 years' imprisonment and fined $500. Rowland now appeals his conviction.

**Analysis**

In his sole appellate issue, Rowland contends that the trial court erred by denying his motion to suppress evidence discovered during the search of his vehicle. Specifically, he asserts that the trial court abused its discretion by finding that Officer Sinegal had a reasonable suspicion to request a stop of the minivan and that the time it took for the canine unit to arrive was reasonable.

In reviewing a trial court's ruling on a motion to suppress evidence, we apply a bifurcated standard of review. *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000); *Wiley v. State*, 388 S.W.3d 807, 815 (Tex. App.— Houston [1st Dist.] 2012, pet. ref'd). We give almost total deference to the trial court's determination of historical facts that depend on credibility, and we conduct a de novo review of the trial court's application of the law to those facts. *Carmouche*, 10 S.W.3d at 327.

When a trial court does not make explicit findings of historical fact, we review the evidence in the light most favorable to the trial court's ruling. *Id*. That is, we will assume that the trial court made implicit findings of fact supported by the record that support its conclusion. *Id*.

## I.     Reasonableness of suspicion of drug trafficking

Generally, interactions between police officers and civilians can be categorized as: (1) consensual encounters, (2) investigative detentions, and

4

(3) arrests. *State v. Woodard*, 341 S.W.3d 404, 411 (Tex. Crim. App. 2011). It is undisputed that Rowland was subjected to an investigative detention when his minivan was stopped by the police. An investigative detention implicates the Fourth Amendment's protections against unreasonable searches and seizures. *State v. Garcia-Cantu*, 253 S.W.3d 236, 238 (Tex. Crim. App. 2008). Therefore, a police officer may stop and briefly detain a person for investigative purposes only if the officer, in light of his experience, has a reasonable suspicion supported by articulable facts that criminal activity may be afoot. *See Terry v. Ohio*, 392 U.S. 1, 30, 88 S. Ct. 1868, 1884–85 (1968); *see also Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005). Whether a temporary investigative detention is reasonable depends on the totality of the circumstances. *See Ford*, 158 S.W.3d at 492–93.

Rowland contends that the trial court abused its discretion when it found reasonable suspicion necessary to detain him for a narcotics investigation, noting that Sinegal testified on cross-examination that he would have had no choice but to let Rowland leave had he not witnessed a traffic violation. Rowland contends that this testimony acknowledged that there was no other basis giving rise to reasonable suspicion for a detention. However, Sinegal also testified to the contrary on direct examination when he stated that he "knew . . . [he] could have" stopped Rowland for reasonable suspicion of possession of narcotics.

In a hearing on a motion to suppress, the trial court may choose to believe or disbelieve all or any part of a witness's testimony. *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000). More to the point, the standard for determining reasonable suspicion is "an objective one that disregards the actual subjective intent of the officer and looks, instead, to whether there was an objectively justifiable basis for the detention." *Derichsweiler v. State*, 348 S.W.3d 906, 914 (Tex. Crim. App. 2011) (citing *Terry*, 392 U.S. at 21-22); *Simmons v. State*, 288 S.W.3d 72, 75 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd). Thus our inquiry is not whether Sinegal subjectively intended a traffic stop or believed he had reasonable suspicion to stop Rowland for possession of narcotics, but instead whether the facts and circumstances known to him objectively supported such a reasonable suspicion.

Rowland also asserts that the facts and circumstances known to Sinegal could not support a reasonable suspicion of narcotics trafficking because he had "no information specific to" Rowland. Based on the totality of the circumstances, however, we conclude that the trial court did not err in finding that Sinegal, in light of his experience and observations, had reasonable suspicion to detain Rowland to investigate whether he was trafficking narcotics. Sinegal had 12 years of experience as a narcotics officer, which included surveilling suspected drug houses "hundreds of times," resulting in numerous arrests. He began surveillance of the

house because an informant, known to be reputable, advised him that it served as a location for many drug transactions. Over the course of the investigation, Sinegal observed several men arriving at the location and staying for brief periods of time, including one individual who the Drug Enforcement Agency suspected was supplying Sinegal's main target with cocaine. Sinegal testified that this pattern of activity was consistent with a "dope stash house," and his conclusion was bolstered by a further investigation which had revealed that "at least 90 percent" of the individuals observed visiting the location had prior drug arrests. On the day Rowland was arrested, he arrived at the house soon after Sinegal's main target and the individual suspected as the target's supplier. Rowland drove a rented minivan with out-of-state license plates and, in Sinegal's experience, such vehicles are frequently used to transport narcotics. After entering the house empty-handed, Rowland and another man returned to load a brown bag and box into the minivan.

We conclude that the trial court did not abuse its discretion by concluding that these articulable facts, coupled with rational inferences, would lead Sinegal to reasonably suspect that Rowland was, or soon would be, trafficking narcotics.

## II. Reasonableness of duration of detention

Rowland further contends that the trial court erred by denying his motion to suppress because the detention was unreasonably prolonged for over an hour while

the officers waited for the canine unit to arrive. His appellate argument in this regard is entirely premised on his characterization of his detention as a traffic stop.

A traffic stop is analogous to an investigative detention, and therefore invokes the same Fourth Amendment protections. *Berkemer v. McCarty*, 468 U.S. 420, 439, 104 S. Ct. 3138, 3150 (1984). The search and seizure must be reasonably related to the circumstances that justified the stop in the first place. *Kothe v. State*, 152 S.W.3d 54, 63 (Tex. Crim. App. 2004). In other words, a traffic stop may last no longer than necessary to effectuate its purpose. *Id*. Thus once a "computer check is completed, and the officer knows that this driver has a currently valid license, no outstanding warrants, and the car is not stolen," the traffic-stop investigation has been fully resolved. *Id*. at 63–64. Once the investigation has been concluded, continued detention of a person is permitted only if there is a reasonable suspicion to believe another offense has been or is being committed. *See id.* at 62–63.

Rowland was detained at 4:50 p.m. Approximately 35 minutes later, after Rowland refused to consent to a search of the vehicle, Sinegal called for a drug-sniffing dog, which arrived at 6:22 p.m., about 90 minutes after the detention was initiated.

Based on these facts, Rowland contends that this case is identical to *Carillo v. State*, No. 05-12-00544-CR, 2014 WL 465424 (Tex. App.—Dallas Feb. 4, 2014,

8

no pet.) (mem. op., not designated for publication), in which officers detained the defendant for a traffic stop after observing him arrive at a mobile home, which a "tip" had indicated was involved in narcotics transactions. *Carillo*, 2014 WL 465424 at *1. The defendant had stayed inside the mobile home for roughly 15 minutes before leaving. *Id*. After following him for 30 minutes, the officers stopped the defendant for a traffic violation. *Id*. He was calm and cooperative, answered the officers' questions, and provided his license. *Id*. After a warrant check came back clear, the officers asked for consent to search the defendant's vehicle, which he refused. *Id*. He was then detained at the scene for nearly an hour while the officers waited for a canine unit to arrive. *Id*. The *Carillo* court determined that the officers prolonged the detention longer than necessary to effectuate the purpose of a traffic stop. *Id*. at *3. The court further determined that the State had failed to establish that the officers had reasonable suspicion that the defendant was or would be engaged in other criminal activity; therefore, the prolonged detention was unjustified. *Id*. at *6.

Unlike in *Carillo*, the continued detention of Rowland after the initial stage of investigation had concluded was justified by the officer's reasonable suspicion that Rowland was engaged in narcotics trafficking. As noted above, Sinegal had surveilled the home for months and determined, based on his experience, that activity at the house was consistent with drug trafficking. Most visitors observed at

9

the house had prior drug arrests. On the day of the arrest, Rowland was observed driving an out-of-state rental van and entering the house after two other individuals who were identified as suspects of drug trafficking. As explained above, these articulable facts known to the police supported a reasonable suspicion that Rowland was involved in narcotics trafficking. Moreover, while the defendant in *Carillo* calmly cooperated with the police during the traffic stop, Rowland appeared visibly nervous. *See Hamal v. State*, 390 S.W.3d 302, 308 (Tex. Crim. App. 2012) ("Although nervousness alone is not sufficient to establish reasonable suspicion for an investigative detention, it can do so in combination with other factors."). Therefore, the continued detention of Rowland was justified to allow inspection by the canine narcotics unit. *See Kothe*, 152 S.W.3d at 62–63; *Sims v. State*, 98 S.W.3d 292, 296 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd).

We conclude that the trial court did not abuse its discretion by denying Rowland's motion to suppress. We overrule Rowland's sole issue.

## Conclusion

We affirm the trial court's judgment.


                                                Michael Massengale
                                                Justice

Panel consists of Justices Jennings, Sharp, and Massengale.

Do not publish. TEX. R. APP. P. 47.2(b).

10