Henry Julio ORTIZ, Appellant,

v.

The STATE of Texas, Appellee.

No. 12–95–00261–CR.

Court of Appeals of Texas, Tyler.

Aug. 30, 1996.

Gregg B. Price, Douglas Froneberger, Sulphur Springs, for appellant.

Frank Long, Sulphur Springs, for appellee.

Before RAMEY, C.J., and HOLCOMB and HADDEN, JJ.

HOLCOMB, Justice.

Henry Julio Ortiz ("Appellant") was convicted by a jury of possession of more than fifty pounds, but less than two thousand pounds, of marijuana. Thereafter, the jury assessed Appellant's punishment at seven years' imprisonment. Appellant assigns three points of error. We will **affirm.**

In his first point of error, Appellant claims that he was convicted on "insufficient evidence," without stating whether he complains of the legal insufficiency or the factual insufficiency of such evidence. Therefore, in the interest of justice, we will review the evidence for both legal and factual sufficiency.

When an appellant challenges both the legal and factual sufficiency of the evidence, an appellate court must first determine whether evidence adduced at trial was legally sufficient to support the verdict. *Clewis v. State,* 922 S.W.2d 126, 133 (Tex.Cr.App.1996). The standard for reviewing the legal sufficiency of the evidence is "whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). *See also Geesa v. State,* 820 S.W.2d 154, 157 (Tex.Cr.App.1991); *Richardson v. State,* 879 S.W.2d 874, 879 (Tex.Cr.App.1993), *cert. denied,* —— U.S. ——, 115 S.Ct. 741, 130 L.Ed.2d 643 (1995). An appellate court should uphold the jury's verdict "unless it is found to be irrational or unsupported by more than a mere modicum of evidence." *Moreno v. State,* 755 S.W.2d 866, 867 (Tex. Cr.App.1988).

After an appellate court determines that the evidence is legally sufficient to support the verdict under the *Jackson* standard, the court may then proceed to review factual sufficiency. *Clewis,* 922 S.W.2d at 133. In conducting a factual sufficiency review, this Court must view all the evidence impartially and set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Clewis,* 922 S.W.2d at 135; *Bigby v. State,* 892 S.W.2d 864, 875 (Tex.Cr.App.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 2617, 132 L.Ed.2d 860 (1995).

In a circumstantial evidence case, it is not necessary that each fact, by itself, directly and independently prove the guilt of the accused. The cumulative force of all the incriminating circumstances may be sufficient to warrant a conclusion of guilt. *Beardsley v. State,* 738 S.W.2d 681, 685 (Tex. Cr.App.1987). Circumstantial evidence cases have no different standard of review than those cases supported by direct evidence. *Geesa v. State,* 820 S.W.2d 154, 158 (Tex.Cr. App.1991).

Appellant cites a lack of direct proof that he knowingly or intentionally possessed the marijuana. Proof of a culpable mental state generally exists in circumstantial evidence. *Gardner v. State,* 736 S.W.2d 179, 182 (Tex.App.—Dallas 1987), *aff'd,* 780 S.W.2d 259 (Tex.Cr.App.1989). Thus, proof of knowledge is an inference drawn by the trier of fact from all the circumstances. *Dillon v. State,* 574 S.W.2d 92, 94 (Tex.Cr.App. 1978); *Trejo v. State,* 766 S.W.2d 381, 385–386 (Tex.App.—Austin 1989, no pet.). A jury can infer knowledge or intent from the acts, conduct, and remarks of the accused and from the surrounding circumstances. *Menchaca v. State,* 901 S.W.2d 640, 652 (Tex. App.—El Paso 1995, pet. ref'd); *Sharpe v. State,* 881 S.W.2d 487, 490 (Tex.App.—El Paso 1994, no pet.). Evidence which affirma-

tively links the accused to the contraband suffices for proof that he possessed it knowingly. *Brown v. State,* 911 S.W.2d 744, 747 (Tex.Cr.App.1995).

■ A person commits an offense of second degree felony possession of marijuana if the person intentionally or knowingly possesses more than fifty pounds, but less than two thousand pounds, of marijuana. Tex. Health & Safety Code Ann. § 481.121(a), (b)(5) (Vernon 1992 & Supp.1996). Possession is defined as "actual care, custody, control or management." Tex. Health & Safety Code Ann. § 481.002(38) (Vernon 1992). To prove unlawful possession of a controlled substance, the State must prove (1) that the accused exercised care, control, or management over the contraband, and (2) that the accused knew the substance was contraband. *Martin v. State,* 753 S.W.2d 384, 386 (Tex.Cr.App.1988).

■ A jury may infer that the accused had actual care, control, or management of a controlled substance from the presence of certain incriminating factors. *Trejo v. State,* 766 S.W.2d 381, 384 (Tex.App.—Austin 1989, no pet.). *See, e.g., Deshong v. State,* 625 S.W.2d 327, 329 (Tex.Cr.App.1981) (accused owned the automobile in which contraband was found, accused operated the automobile, and the contraband was so situated that it was accessible to the accused). Additionally, a jury may infer that a person in control of a vehicle has knowledge of the presence of the contraband, particularly where the amount of contraband is large enough to indicate the person knew of its existence. *Menchaca v. State,* 901 S.W.2d 640, 652 (Tex.App.—El Paso 1995, pet ref'd.) (jury could infer from presence of 49.5 pounds of marijuana that defendant knew contraband was in vehicle). Further, when an accused is operating a vehicle and is alone, he exercises control over the vehicle in which the contraband is concealed, and is deemed to have possession of the contraband. *Id.*

Similarly, the presence of certain factors creates an inference that the accused knew of the presence of the contraband and its forbidden nature. *Lewis v. State,* 664 S.W.2d 345, 349 (Tex.Cr.App.1984) (conduct by accused indicated a consciousness of guilt); *Duff v. State,* 546 S.W.2d 283, 287 (Tex.Cr.App.1977) (odor of raw or recently burned marijuana indicated accused knew of contraband and occupants of car gave conflicting statements about relevant matters).

■ On May 9, 1995, Texas Department of Public Safety Trooper Bruce Roberts and Trooper Paul Noble were working routine patrol on Interstate 30 East in Sulphur Springs, Hopkins County, Texas. At approximately 10:30 p.m., the troopers' vehicle was parked on the shoulder of the interstate. Appellant drove a red 1986 Chevrolet Camaro past the troopers, weaved left and hit the grassy median, kicking up dirt and grass. The troopers pursued Appellant, and observed that the Camaro continued to weave, this time in the right lane, striking the stripes on both sides of the lane two or three times. Roberts testified that he and Trooper Noble thought Appellant was intoxicated. After the troopers pulled Appellant over, Appellant got out of the Camaro and approached them. Roberts informed Appellant that they had stopped him for weaving dangerously. Roberts then questioned Appellant about his trip and asked if he had proof of insurance, which he did not. Appellant acted nervous and appeared to be "under the influence of something." Roberts questioned Appellant about his line of work. Appellant stated that he was a contractor, and that he was going to Memphis where he had a crew and work to be done. However, Appellant could not name the members of his crew. Roberts had done a lot of construction work on homes for his father and grandfather, who were builders, and Appellant's answers concerning his contracting work aroused Roberts' suspicions. In answering the questions, Appellant took about thirty seconds to answer each question and did not make eye contact. Appellant told the officers he had purchased the Camaro from a used car dealer in Memphis, but could not identify the dealer. The car had Texas license plates and

was not registered to Appellant. The officers were suspicious and asked Appellant if they could search his car for drugs. Appellant refused and folded his arms in a defensive manner. Roberts testified that he had been involved in over a hundred drug busts involving automobiles and stated that he formed the opinion Appellant possibly had drugs in the car. The officers administered a horizontal gaze test,[1] which Appellant passed. However, in the officers' opinion, Appellant was "under the influence of something." The officers called Scott Sewell, a drug dog handler with the Sulphur Springs Police Department. Sewell arrived with his drug dog within twenty minutes.

Sewell testified that he and the drug dog were duly certified and schooled in canine drug detection. The dog identified the location of drugs by scratching where he smelled drugs in the vehicle. First, the dog scratched at the passenger door, and then scratched at the trunk. Sewell stated the dog identified the door because the smell of marijuana was also present at the door.

The officers then opened the trunk and found more than fifty pounds of marijuana in five wrapped and taped bundles under a blue blanket. They also found a hand-drawn map in a bag showing a route from San Antonio to an address in Memphis, and a prescription pill bottle for Prozac with one pill inside. Appellant was carrying approximately $400.00 in cash.

Appellant testified at trial and denied he had been weaving on the highway. He further stated that he was arrested around dusk and not at 10:30 p.m. as Roberts had testified. Appellant had traded his Yugo at a garage in San Antonio and acquired the Camaro from a Hispanic he could not identify. Appellant stated he was going to Memphis to do contracting work. Appellant stated that he had previously been a contractor while working full time with at-risk children. He stated that he had dropped out of seminary

several years before, and denied any knowledge of the marijuana in the trunk. Appellant explained that he was on Prozac because he had a nervous breakdown when his wife left him for another man.

Three additional witnesses, Reverend Leon Morris, Mary Ellen Davila, and Mary E. Flores, testified on Appellant's behalf at trial. Morris, a Baptist preacher, testified that he initially met Appellant when Appellant was cleaning houses near Morris' home. Morris talked with Appellant about doing some work with the youth of his church. Morris sold Appellant a 1988 Yugo on the day prior to his arrest in Sulphur Springs. Morris stated the Yugo only needed a $90.00 carburetor and an exhaust "donut." Flores and Davila told of work that Appellant had done with youth through the St. Henry Catholic Church in San Antonio.

Viewed in the light most favorable to the verdict, a rational jury could have concluded beyond a reasonable doubt that Appellant had care, control, or management over the contraband, and knowingly possessed the contraband. Appellant had sole possession of the Camaro. He testified that he owned the car. At the time of his arrest, Appellant was operating the car. There was some evidence that the smell of marijuana was in the passenger compartment of the car. The hand-drawn map to Memphis is consistent with Appellant being a drug courier. Appellant's statements at the time of arrest were inconsistent with the testimony offered at trial. Further, the arresting officers noted that Appellant was acting guilty. Finally, the jury could have inferred from the large amount of marijuana located in the trunk of the Camaro that Appellant was aware of the presence of the contraband.

Similarly, after impartially reviewing all of the evidence, the jury's verdict was not so against the great weight and preponderance of the evidence to be unjust. We therefore overrule Appellant's first point of error.

---

1. The Horizontal Nystagmus Gaze test can determine whether a person has been drinking alcohol.

In his second point of error, Appellant argues that the officers seized and unreasonably detained him, with the ultimate intent of subjecting him to a warrantless search, initially lacking probable cause or even reasonable suspicion, without his consent. We disagree.

An accused's remedy for unreasonable seizure and search of his person is the exclusion of any evidence obtained in the unauthorized search. To forestall the admission of improperly seized evidence, an accused should file a motion to suppress the evidence. The accused must obtain a ruling on his motion to suppress. *Calloway v. State*, 743 S.W.2d 645, 650 (Tex.Cr.App.1988). By failing to obtain a ruling on a motion to suppress and failing to object at trial to the introduction of the offending evidence, an accused presents no error for appellate review. *Calloway*, 743 S.W.2d at 650; *Dunavin v. State*, 611 S.W.2d 91, 94 (Tex. Cr.App. [Panel Op.] 1981).

Appellant has not preserved error regarding his seizure and detention. Appellant prepared and filed two motions to suppress. However, the record submitted to this Court does not contain the trial court's ruling on either motion. Additionally, Appellant did not object to the admission of the evidence seized as a result of the complained-of search. We therefore overrule Appellant's second point of error.

In his third point of error, Appellant claims he was not afforded due process under article I, section 10 of the Texas Constitution and the Fourteenth Amendment to the United States Constitution because of the ineffective assistance of his trial counsel. Specifically, Appellant asserts that his trial counsel was ineffective for failing to urge to the trial court his motions to suppress evidence.[2] We disagree.

To determine claims of ineffective assistance of counsel during the guilt/innocence phase, the Texas Court of Criminal Appeals has adopted the two-pronged analysis set forth in *Strickland v. Washington*. *Hernandez v. State*, 726 S.W.2d 53, 56 (Tex.Cr.App. 1986). First, a "defendant must show that counsel's performance was deficient, to the extent that counsel failed to function as the 'counsel' guaranteed by the Sixth Amendment." *Jackson v. State*, 877 S.W.2d 768, 771 (Tex.Cr.App.1994) (citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984)). Second, "the defendant must show that counsel's deficient performance prejudiced the defense." *Id.* "To show prejudice, '[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Jackson*, 877 S.W.2d at 771 (quoting *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068). It is the defendant's burden to prove ineffective assistance. *Jackson*, 877 S.W.2d at 771.

"A claim of ineffective assistance of counsel must be determined upon the particular circumstances and facts of each individual case." *Johnson v. State*, 691 S.W.2d 619, 626 (Tex.Cr.App.1984), *cert. denied*, 474 U.S. 865, 106 S.Ct. 184, 88 L.Ed.2d 152 (1985). There is a strong presumption that trial counsel's conduct falls within the wide range of reasonably professional assistance. *Martinez v. State*, 675 S.W.2d 573, 575 (Tex. App.—San Antonio 1984, no pet.). Moreover, trial counsel is certainly not ineffective for failure to make meritless objections. *Riles v. State*, 595 S.W.2d 858, 861 (Tex.Cr. App.1980).

"An attorney must appraise a case and do the best he can with the facts and the fact that other counsel might have tried the case differently does not show inadequate representation." *Ex parte Prior*, 540 S.W.2d 723, 727 (Tex.Cr.App.1976). An appellant's trial counsel must be gauged by the totality of the representation rather than by

2. The record is silent on whether Appellant's trial counsel urged Appellant's motions to suppress

evidence. There is simply no statement of facts from a hearing on either motion to suppress.

any isolated acts or omissions of trial counsel. *Ex parte Raborn,* 658 S.W.2d 602, 605 (Tex. Cr.App.1983).

The focus of Appellant's ineffective counsel argument is that although Appellant's trial counsel filed two motions to suppress evidence, he failed to obtain a ruling from the trial court. We therefore examine the applicable law to determine whether the outcome of the Appellant's trial would have been different if Appellant's trial counsel had urged the motions to suppress evidence.

■■■■■ "A routine traffic stop is a temporary investigative stop." *Campbell v. State,* 864 S.W.2d 223, 225 (Tex.App.—Waco 1993, pet. ref'd). "In order to justify an investigative stop, officers must have specific articulable facts, which in the light of their experience and general knowledge, together with rational inferences from those facts, would reasonably warrant the intrusion." *Anderson v. State,* 701 S.W.2d 868, 873 (Tex. Cr.App.1985), *cert. denied,* 479 U.S. 870, 107 S.Ct. 239, 93 L.Ed.2d 163 (1986). "The articulable facts used by the officers must create a reasonable suspicion that some activity out of the ordinary is occurring or has occurred, some suggestion to connect the detainee with the unusual activity, and some indication that the unusual activity is related to crime." *Id.* "An officer may lawfully stop and detain a person for a traffic violation." *McVickers v. State,* 874 S.W.2d 662, 664 (Tex.Cr.App.1993). Requests for information concerning a driver's license, ownership of a vehicle, insurance information, his destination, and the purpose of a trip are all proper inquiries. *United States v. Shabazz,* 993 F.2d 431, 437 (5th Cir.1993). "An officer is entitled to rely on all of the information obtained during the course of his contact with the citizen in developing the articulable facts which would justify a continued investigatory detention." *Bustamante v. State,* 917 S.W.2d 144, 146 (Tex.App.—Waco 1996, no pet. h.) (citing *Razo v. State,* 577 S.W.2d 709, 711 (Tex. Cr.App. [Panel Op.] 1979)). An open air "sniff" by a drug detection dog is not a "search" within the meaning of the Fourth Amendment. *United States v. Place,* 462 U.S. 696, 707, 103 S.Ct. 2637, 2644, 77 L.Ed.2d 110, 121 (1983). The dog sniff is much less intrusive than a typical search and only discloses the presence or absence of narcotics. *Id.*

■■■■ Appellant's dangerous weaving gave the troopers reasonable suspicion to believe that he was driving under the influence. The troopers observed that Appellant drove the Camaro past them, weaved left, hit the grassy median, and kicked up some dirt and grass. Appellant continued to weave inside his lane, actually striking the stripe on both sides of the lane two or three times. The troopers' initial investigative stop was constitutionally proper.

■■■■ During the time between the initial valid stop and the calling out of the narcotics detection dog, the officers developed reasonable suspicion sufficient to warrant detaining Appellant and the vehicle until the dog arrived and performed the sniff test around the car. When questioned by the troopers, Appellant gave decidedly vague answers regarding his work as a contractor, exhibited very little knowledge about the building industry, was unable to name the members of his crew, could not remember where he bought his car, acted generally nervous, did not make eye contact, and took an undue amount of time to answer each question. Trooper Roberts testified that Appellant's behavior was consistent with the behavior of other persons he had arrested for drug possession. Reasonable suspicion existed to justify further detention of Appellant until the narcotics dog arrived. Once the dog alerted to the door area and trunk of the car, the troopers had probable cause to search the vehicle.

Because the troopers properly conducted the initial stop, subsequent detention, and dog sniff, the trial court should have properly overruled the motions to suppress. Appellant has not demonstrated that, but for his counsel's errors, the result of his trial would have been different. Therefore, Appellant's

defense counsel did not prejudice the defense to the extent that the outcome of the trial would have been different had he asserted the motion to suppress. We therefore overrule Appellant's third point of error.

The judgment of the trial court is **affirmed.**