Mohammad Mehdi NAZEMI, Appellant,

v.

The STATE of Texas, Appellee.

No. 13–99–253–CR.

Court of Appeals of Texas, Corpus Christi.

Aug. 31, 2000.

George David Murphy, Jr., Houston, for Appellant.

Calvin A. Hartmann, Asst. Dist. Atty., John B. Holmes, Jr., Dist. Atty, S. Elaine Roch, Asst. Dist. Atty., Houston, for State.

Before Chief Justice SEERDEN and Justices DORSEY and YAÑEZ.

## OPINION

Opinion by Chief Justice SEERDEN.

Appellant Mohammed Mehdi Nazemi was convicted of trademark counterfeiting. On appeal, appellant contends that the State failed to allege and prove that he acted with a culpable mental state. We affirm.

### Background

Nazemi was the owner and proprietor of Jasmeen Jewelry, a shop located in the Gulf Freeway Indoor Market, a large market containing jewelry and other retail shops. On two occasions, Nazemi or his wife sold jewelry with counterfeit trademarks to undercover officers. The jewelry consisted of charms with Disney or Warner Bros. characters, or the trademark Nike "swoosh" symbol. Nazemi was thus charged by indictment with the felony offense of trademark counterfeiting.

Nazemi pleaded not guilty, and a jury found him guilty as charged in the indictment. The trial court assessed punishment at two years confinement, probated for five years, and imposed a $5,000 fine.

### Introduction

The Texas Penal Code provides that:

A person commits an offense if the person intentionally manufactures, displays, advertises, distributes, offers for sale, sells, or possesses with intent to sell or distribute a counterfeit mark or an item or service that:

(1) bears or is identified by a counterfeit mark; or

(2) the person knows or should have known bears or is identified by a counterfeit mark.

TEX. PENAL CODE ANN. § 32.23 (Vernon Supp.2000). Nazemi was indicted under subsection (1) of the statute. Under the indictment, the State alleged that Nazemi did "intentionally possess with intent to sell and distribute items, namely one hundred sixty-nine earrings, thirty rings, thirty-nine pendants and one bracelet bearing and identified by a counterfeit mark."

In his first issue, Nazemi argues that the trial court violated his right to due process by failing to quash the indictment against him for its failure to allege a culpable mental state, specifically, that "Nazemi knew that the jewelry was counterfeit." In his second issue, Nazemi argues that the jury charge failed to instruct the jury that the State was required to prove beyond a reasonable doubt that Nazemi knew the items he possessed contained a counterfeit mark. Thus, Nazemi asks this Court to construe the statute to require that Nazemi was aware that the items were counterfeit. In his third issue, assuming that this Court accepts Nazemi's construction of the statute, Nazemi argues that the State's proof was legally and factually insufficient to prove that Nazemi knew that the items were counterfeit.

### Intent

Nazemi contends that subsection (1) of the statute, as written, creates a strict liability crime for selling goods containing counterfeit marks. We do not agree with this interpretation of the statute.

Nazemi argues that the word "intentionally" in the statute's general statement modifies only specified verbs, e.g., manufactures, displays, advertises, distributes, offers for sale, sells, or possesses with intent to sell or distribute. However, we believe this language cannot be read in isolation. By reading the statutory provision in its entirety, we find that the statute expressly includes a culpable mental state by providing that a person commits an

offense if the person *intentionally* sells a counterfeit mark. TEX. PENAL CODE ANN. § 32.23 (Vernon Supp.2000)(emphasis added). Thus, subsection (1) of the statute requires the defendant to intentionally sell a counterfeit mark, whereas subsection (2) requires the defendant to either intentionally sell a counterfeit mark, or sell a mark he should have known was counterfeit. To construe the statute otherwise would be to render subsection (2) as mere surplusage.

Our interpretation of the statute is consonant with section 6.02 of the penal code which provides that a culpable mental state is required unless the definition of the offense plainly dispenses with any mental element. *See* TEX. PENAL CODE ANN. § 6.02 (Vernon 1994); *Aguirre v. State*, 22 S.W.3d 463, 470 (Tex.Crim.App. 1999). Our interpretation is further substantiated by policy considerations underlying the distinction between strict liability crimes and those that require a culpable mental state. *Aguirre*, 22 S.W.3d at 471–73. We overrule Nazemi's second issue.

### The Indictment

■ In his first issue, Nazemi alleges that the trial court erred by refusing to set aside the indictment because it failed to allege a culpable mental state. In general, an indictment must plead every element which must be proven at trial. *Dinkins v. State*, 894 S.W.2d 330, 338 (Tex.Crim.App. 1995). Naturally, this includes the culpable mental state of the offense. *Id.; Thompson v. State*, 697 S.W.2d 413, 415 (Tex.Crim.App.1985). If an indictment fails to allege a culpable mental state for an offense, it is defective and is subject to a motion to quash. *Dinkins*, 894 S.W.2d at 339; *Thompson*, 697 S.W.2d at 415. An indictment which tracks the language of the statute is normally sufficient to provide notice to the person charged with an offense. *Thomas v. State*, 621 S.W.2d 158, 161 (Tex.Crim.App.1980). We note that the language of Nazemi's indictment directly tracks the language of the statute. We read the indictment as properly alleg-

ing a required mental state. It was not error for the trial court to deny Nazemi's motion to quash. We overrule Nazemi's first issue.

### Legal and Factual Sufficiency of the Evidence

In his third issue, Nazemi argues that the State's proof was legally and factually insufficient to prove that Nazemi knew that the items were counterfeit

■ A legal sufficiency review calls upon the reviewing court to view the relevant evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *Jackson v. State*, 17 S.W.3d 664, 667 (Tex.Crim.App.2000). In a legal sufficiency review, the fact finder remains the exclusive judge of the credibility of the witnesses and of the weight to be given their testimony. *See Barnes v. State*, 876 S.W.2d 316, 321 (Tex.Crim.App. 1994). The appellate court serves to ensure the rationality of the fact finder, but does not disregard, realign, or weigh the evidence. *Moreno v. State*, 755 S.W.2d 866, 867 (Tex.Crim.App.1988). These standards for review apply equally to direct and circumstantial evidence cases. *Geesa v. State*, 820 S.W.2d 154, 161 (Tex. Crim.App.1991).

■ In contrast, a factual sufficiency review dictates that the evidence be viewed in a neutral light, and sets aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Clewis v. State*, 922 S.W.2d 126, 134 (Tex.Crim.App. 1996). Factual sufficiency review must be appropriately deferential so as to avoid the appellate court's substituting its own judgment for that of the fact finder. *Clewis*, 922 S.W.2d at 133. The court's evaluation should not substantially intrude upon the jury's role as the sole judge of the weight

and credibility of witness testimony. *Santellan v. State*, 939 S.W.2d 155, 164 (Tex. Crim.App.1997).

At trial, Nazemi denied any knowledge that the goods were counterfeit. However, testimonial evidence adduced at trial showed that Nazemi was relatively sophisticated and knowledgeable in retail matters. At the time of this incident, he had been a resident or citizen of the United States for more than twenty years, and had a bachelor's degree in physics. Nazemi had worked as a car salesman and clerk in a convenience store, and owned other business interests besides Jasmeen Jewelry. Nazemi's wife had previous experience with retail jewelry sales.

According to the testimony at trial, it is a relatively simple matter to confirm the legitimacy of trademarked goods. One need merely visually inspect the goods to ascertain whether or not they contain a mark. There was further testimony that the depicted imagery on the counterfeit goods was not of good quality.

Under these circumstances, we hold that there was legally and factually sufficient evidence of the requisite intent. Intent may be inferred from circumstantial evidence. *Wolfe v. State*, 917 S.W.2d 270, 275 (Tex.Crim.App.1996). Thus, proof of knowledge is an inference drawn by the trier of fact from all the circumstances. *Dillon v. State*, 574 S.W.2d 92, 94 (Tex. Crim.App.1978); *Cantu v. State*, 944 S.W.2d 669, 670 (Tex.App.-Corpus Christi 1997, pet. ref'd). A jury can infer knowledge or intent from the acts, conduct, and remarks of the accused and from the surrounding circumstances. *Withers v. State*, 994 S.W.2d 742, 746 (Tex.App.-Corpus Christi 1999, pet. ref'd); *Menchaca v. State*, 901 S.W.2d 640, 652 (Tex.App.-El Paso 1995, pet. ref'd); *Ortiz v. State*, 930 S.W.2d 849, 852 (Tex.App.-Tyler 1996, no pet.).

In determining the legal sufficiency of the evidence to show appellant's intent, and faced with a record that supports conflicting inferences, we "must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflict in favor of the prosecution, and must defer to that resolution." *Matson v. State*, 819 S.W.2d 839, 846 (Tex.Crim.App.1991). In the instant case, taking all of the evidence in the light most favorable to the verdict, any rational trier of fact could have found that Nazemi intentionally sold counterfeit goods.

As for the factual sufficiency of Nazemi's intent, we cannot say that even considering Nazemi's testimony and any other evidence in his favor, the jury's verdict was against the great weight of the incriminating evidence presented at trial so as to be clearly wrong and unjust. In this regard, we note that the State introduced evidence suggesting that Nazemi failed to pay sales tax, kept two sets of accounting books, and miscalculated the quoted prices on goods to the buyer's disadvantage. The jury could have considered this evidence as tending to cast doubts on Nazemi's credibility. In short, the jury was free to reject Nazemi's rendition of the events. *See Santellan v. State*, 939 S.W.2d 155, 164 (Tex.Crim.App.1997). We overrule appellant's final issue.

The judgment of the trial court is affirmed.

Concurring Opinion by Justice J. BONNER DORSEY.

DORSEY, Justice, concurring.

I concur in the affirmance of the conviction; however I disagree with the analysis expressed. In my opinion the legislature denominated the crime to be the intentional selling a "counterfeit mark" or an item bearing a "counterfeit mark," without requiring knowledge on the part of the seller that the item was indeed counterfeit. It is enough that the item bear or be identified by a counterfeit mark. What the seller knew or should have known of its counterfeit status is not necessary for a violation if the State so chooses to prosecute under

subsection (1) of § 32.23 of the Penal Code. Of course the State could prosecute under subsection (2) that requires evidence that the seller knew or should have known that the item bears or is identified by a counterfeit mark.

The trial judge denied the proposed instruction that would have required knowledge that the goods were counterfeit, or that the defendant should have known they were. Thus the necessity of the knowledge of the defendant as an element of the offense was squarely presented to the court below and to this court. I think by the clear language of the statute the legislature did not require such knowledge by the seller in order for his actions to constitute a crime.

There are good reasons for the legislature to put the risk of prosecution on the seller of this type of goods. It requires care on the part of the seller to make sure what he offers for sale is genuine, for if it is not real, the seller is in peril of prosecution. Such a danger should encourage sellers to be very cautious in what they offer for sale, with the result that items of doubtful provenance will be driven from the market by the actions of conscientious and worried vendors.

Given the legislature's decision that one who offers a counterfeit trinket for sale has committed a crime regardless of whether the seller knows the item is fake, is there some limitation on the legislature's authority that would prohibit such action? I find none. I believe it to be a valid exercise of the police power of the State.