# NO. 12-12-00271-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *DANNY LEE PORTER,* *APPELLANT* | § | *APPEALS FROM THE 114TH* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *THE STATE OF TEXAS,* *APPELLEE* | § | *SMITH COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

Danny Lee Porter appeals his conviction for possession of a controlled substance. Appellant raises three issues on appeal. We modify and affirm as modified.

## BACKGROUND

Appellant was charged by indictment with the felony offense of possession of a controlled substance, namely, methamphetamine, in an amount of one gram or more but less than four grams.[1] Initially, Appellant pleaded guilty to the offense, but indicated during his plea that he did not know he had the methamphetamine on his person. As a result, the trial court refused to accept Appellant's guilty plea, and a bench trial was held.

The issue at trial was whether Appellant's possession of methamphetamine was intentional or knowing. Ultimately, the trial court found Appellant guilty. Appellant pleaded "true" to the State's two enhancement paragraphs (one enhancement was alleged in the indictment; the other was alleged in the State's pretrial notice of intent to seek higher punishment). The trial court found

---

[1] *See* TEX. HEALTH & SAFETY CODE ANN. § 481.102(6); § 481.115(c) (West 2010).

the enhancements "true," and assessed punishment at thirty-five years of imprisonment. The trial court did not assess a fine and ordered court costs to be paid. The judgment of conviction reflects that the amount of court costs assessed is $629.00.

<u>**SUFFICIENCY OF THE EVIDENCE**</u>

In his first issue, Appellant contends that the evidence is legally insufficient to prove that he intentionally or knowingly possessed the methamphetamine.

**<u>Standard of Review</u>**

We review a challenge to the legal sufficiency of the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979); *see also* **Brooks v. State**, 323 S.W.3d 893, 902 (Tex. Crim. App. 2010). We defer to the trier of fact's responsibility to resolve conflicts in testimony, weigh evidence, and draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789. Each fact need not point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction. **Hooper v. State**, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). This means that we may look at events occurring before, during, and after the commission of the offense and may rely on actions of the defendant that show an understanding and common design to do the prohibited act. *Id.*

We do not resolve any conflict of fact, weigh any evidence, or evaluate the credibility of any witnesses, as this is the function of the trier of fact. **Ferguson v. State**, 313 S.W.3d 419, 423 (Tex. App.—Houston [1st Dist.] 2009, no pet.). In a bench trial, the trial judge is the sole trier of fact and judge of the credibility of the witnesses, and may choose to believe or not believe the witnesses, or any portion of their testimony. *See* **Sharp v. State**, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986); *see also* **Hayes v. State**, No. 12-11-00289-CR, 2012 WL 3362732, at *2 (Tex. App.—Tyler Aug. 15, 2012, no pet.) (mem. op., not designated for publication). Furthermore, a witness may be believed even though some of his testimony may be contradicted, part of his testimony accepted, and the rest rejected. *Sharp*, 707 S.W.2d at 614.

The sufficiency of the evidence is measured by the offense as defined by a hypothetically

correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). A hypothetically correct jury charge accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the state's burden of proof or unnecessarily restrict the state's theories of liability, and adequately describes the particular offense for which the appellant was tried. *Id.*

To support Appellant's conviction for possession of a controlled substance as alleged in the indictment, the State was required to prove beyond a reasonable doubt that Appellant intentionally or knowingly possessed methamphetamine in an amount greater than one gram but less than four grams. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.115(c) (West 2010).

**Applicable Law**

"A person acts intentionally, or with intent, with respect to the nature of his conduct . . . when it is his conscious objective or desire to engage in the conduct or cause the result." TEX. PENAL CODE ANN. § 6.03(a) (West 2011). "A person acts knowingly, or with knowledge, with respect to the nature of his conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist. A person acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result." *Id.* § 6.03(b). To prove possession of a controlled substance, the state must prove beyond a reasonable doubt that the defendant exercised actual care, custody, control, or management over the controlled substance knowing that the controlled substance in his possession was contraband. *See King v. State*, 895 S.W.2d 701, 703 (Tex. Crim. App. 1995).

A defendant's culpable mental state can be inferred from circumstantial evidence, such as his words, acts, and conduct. *Guevara v. State*, 152 S.W.3d 45, 50 (Tex. Crim. App. 2004); *State v. Walker*, 195 S.W.3d 293, 300 (Tex. App.—Tyler 2006, no pet.). This includes inferences of knowledge or intent based on the acts, conduct, and remarks of the accused and from the surrounding circumstances. *See Ortiz v. State*, 930 S.W.2d 849, 852 (Tex. App.—Tyler 1996, no pet.) ("proof of knowledge is an inference drawn by the trier of fact from all the circumstances").

**The Evidence**

The sole issue during Appellant's bench trial was whether Appellant's possession of the methamphetamine was intentional or knowing. Timothy Thompson, a patrol officer for the Smith County Sheriff's Department, testified that on the night of February 27, 2012, he was twice dispatched to a residence in a Smith County mobile home park. Officer Thompson testified that

3

he was dispatched by a general call that was in reference to "special persons." No action was taken by Thompson or any other law enforcement officer because the "special persons" had left the residence by the time Thompson arrived.

Approximately two hours later, Thompson was again dispatched to the same residence. When Thompson returned to the mobile home park, another deputy was already on the scene. The deputy was speaking to two men, Joshua Bates and Appellant. Thompson arrested Appellant because he had outstanding warrants. He conducted a search incident to arrest and found three containers on Appellant's person. These containers were admitted into evidence as State's Exhibits 2A, 2B, and 2C.

Exhibit 2A was a round metal container that was found in Appellant's right front blue jeans pocket. Methamphetamine was found inside Exhibit 2A. When Thompson discovered the methamphetamine, Appellant "sighed." Thompson testified, and Appellant later confirmed, that Appellant remained silent during the search incident to arrest and when he was transported to the Smith County Jail. Appellant did not indicate that he was unaware of the contents of the round metal container inside his pocket. Thompson's search of Appellant further revealed marijuana in the metal breath mint container marked as Exhibit 2C. Exhibit 2C was found in the same pocket as Exhibit 2A. Thompson found Exhibit 2B in the inside pocket of the jacket Appellant was wearing. He also found baggies and a marijuana pipe in the same jacket pocket. Thompson confirmed that upon their arrival at the Smith County Jail, another pipe was found in Appellant's possession. The State rested its case at the conclusion of Thompson's testimony. The defense then presented evidence from two witnesses.

The defense's first witness, Joshua Bates, testified that he was with Appellant on the night of February 27, 2012, and confirmed that they had been at the location described in Thompson's testimony.[2] Bates testified that he and Appellant went to Thomas Holly's house to "visit with some girls," and were there for two to three hours before they left. Bates testified that there were two women, Heather and Tina, at Holly's house when they arrived. At first, Bates testified that nobody was using drugs, but he later testified that he saw Heather smoking methamphetamine. According to Bates, Heather was the only one who was smoking methamphetamine; everyone else

---

[2] When Bates testified, he was incarcerated in the Smith County Jail on pending drug charges. Bates also had served three years in prison for committing the offense of burglary of a habitation.

was drinking alcohol.

Bates identified Exhibit 2A as the container with the methamphetamine that Holly tried to sell him for two hundred dollars when Bates and Appellant were at his house. According to Bates, Appellant was not aware of the proposed transaction because Appellant was in a different location of the house and he never told Appellant that Holly tried to sell him anything. Sometime after Holly tried to sell the methamphetamine, but before Bates and Appellant left, Holly placed Exhibit 2A on the kitchen table where Appellant was sitting. Bates testified that there were "numerous items" on the kitchen table, including Exhibits 2B and 2C, that Appellant had brought with him inside the house.

Later that night, Bates and Appellant left Holly's house because they needed cigarettes, wanted to go to the beer store, and needed to give a female friend a "ride." Appellant was at the kitchen table when Bates told him to "get everything to the truck" because they were about to leave. Appellant then waited in Bates's pickup truck because Bates was "busy with a female friend." When they left Holly's house, Appellant was wearing Bates's jacket and when they returned, none of the tins were on the kitchen table. But when Bates and Appellant returned, they never went inside Holly's house because sheriff's deputies drove up behind them.

After Bates's testimony concluded, Appellant testified on his own behalf. Appellant testified that he went with Bates to Holly's house in order to meet a girl. Appellant testified that he brought his medication, marijuana, marijuana pipe, rolling papers, some cokes, and beer inside Holly's house. Thus, Appellant admitted that Exhibits 2B and 2C and their contents were his. By the time Bates told Appellant that they were leaving, Appellant was "mad" because they were there to "party" and "meet some girls," and the girl that he was talking to left and did not return. Appellant admitted to smoking a "joint" earlier that night and said that he was distracted when he gathered the items on the kitchen table. He explained that he "didn't pay any attention to what was on the table," because he was "trying to correspond with a young lady and she had [his] undivided attention." According to Appellant, he did not realize that he had the container of methamphetamine in his possession. Appellant testified, "I thought I had my [S]koal in my pocket."

On cross examination, the prosecutor presented Appellant with Exhibit 2A and asked whether 2A was the "right size for a can of [S]koal." Appellant answered by stating that it was

5

"roughly close." The prosecutor continued, "Are you sure? A [S]koal can is quite a bit bigger than that; is that right?" Appellant responded by admitting that in addition to being distracted, his judgment was "possibly" impaired that night (from smoking marijuana). Unlike Bates, Appellant testified that he did not see a woman smoking methamphetamine in the house, even though she had been smoking at the time Appellant and Bates arrived and was the same woman Appellant had been talking with that night. He then went on to say that he "never saw" the container with the methamphetamine before, despite the fact that it was inside his jeans pocket along with the metal tin that held his marijuana.

## Analysis

The surrounding circumstances leading up to, during, and after Appellant's arrest, when viewed in the light most favorable to the verdict, show that a fact finder could have reasonably found that Appellant's possession of the methamphetamine was intentional or knowing beyond a reasonable doubt. *See Brooks*, 323 S.W.3d at 902; *Hooper*, 214 S.W.3d at 13.

First, Appellant and Bates were admittedly in a home where at least one person was smoking methamphetamine on the night of Appellant's arrest. The individual identified as smoking methamphetamine is the same woman Appellant had been talking with before she went into another room (and allegedly never returned). Second, Appellant was in close proximity to the container holding the two hundred dollars' worth of methamphetamine for an extended period of time and could have easily looked inside the container without anyone else's knowing it. Third, Appellant went to Holly's house to "party," which involved, at minimum, smoking marijuana and drinking alcohol. Although Appellant testified that he brought his medication because he suffers from anxiety, the fact that he brought several pills with him in a breath mint container along with several empty baggies suggests that Appellant may have had other intended uses for the medication. Finally, Appellant failed to display any sign of surprise upon the officer's discovery of the methamphetamine. Appellant's "sigh" and lack of surprise also support the inference that Appellant intentionally or knowingly possessed the methamphetamine. *See Ortiz*, 930 S.W.2d at 852.

Even though Appellant presented testimony that he had no knowledge that methamphetamine was inside the container before and while the container was in his pocket, the trial court was free to disbelieve his testimony. *See Sharp*, 707 S.W.2d at 614; *Hayes*, 2012 WL

6

3362732, at *2. The circumstances surrounding Appellant's arrest, when combined with the trial court's credibility determinations, are sufficient to show that Appellant intentionally or knowingly possessed the methamphetamine. *See* TEX. PENAL CODE ANN. § 6.03(a), (b); *Hooper*, 214 S.W.3d at 13; *King*, 895 S.W.2d at 703. Accordingly, we overrule Appellant's first issue.

**IMPOSITION OF COURT COSTS**

In his second and third issues, Appellant contends that the trial court erred by imposing court costs that were not supported by the bill of costs and that the evidence is legally insufficient to support the trial court's assessment of court costs.[3]

**Timeliness of Bill of Costs and Due Process**

Appellant argues that Article 103.001 of the Texas Code of Criminal Procedure requires a certified bill of costs to be issued "prior to or contemporaneously with the judgment." Because the record was supplemented more than one hundred days after the judgment was filed, Appellant contends that there is "no indication that the costs were ever brought to the attention of the trial judge."

The code of criminal procedure does not require that a certified bill of costs be filed at the time the trial court signs the judgment of conviction or even before a criminal case is appealed. *See* TEX. CODE CRIM. PROC. ANN. arts. 103.001, 103.006 (West 2006); *Johnson v. State*, No. 12-12-00289-CR, 2013 WL 3054994, at *1 (Tex. App.—Tyler June 19, 2013, no pet.) (not yet released for publication).

The judgment of the trial court assesses court costs in the amount of $629.00. The bill of costs assesses $629.00 in court costs. The judgment contains the trial judge's signature and assesses the amount reflected in the bill of costs. Thus, contrary to Appellant's assertion, there is some indication that the court costs were, in fact, brought to the attention of the trial court. *Contra Johnson v. State*, 389 S.W.3d 513, 515 n.1, 517 (Tex. App.—Houston [14th Dist.] 2013, pet. granted) (stating that record contained no indication that computer screen printout reflecting

---

[3] The State contends that the trial court did not err by imposing court costs and argues in the alternative that Appellant failed to preserve error on this issue. A contemporary objection in the trial court is not required to challenge the assessment of costs. *See Cardenas v. State*, No. 01-11-01123-CR, 2013 WL 1164365, at *5 (Tex. App.—Houston [1st Dist.] Mar. 21, 2013, no pet.) (not yet released for publication) (citing *Mayer v. State*, 309 S.W.3d 552, 555 (Tex. Crim. App. 2010) ("A claim regarding sufficiency of the evidence need not be preserved for appellate review at the trial level[,] and is not waived by the failure to do so.")).

bill of costs was brought to trial judge's attention); *but see **Ballinger v. State***, No. 12-12-00280-CR, 2013 WL 3054935, at \*2 (Tex. App.—Tyler June 19, 2013, no pet.) (not yet released for publication) (distinguishing ***Johnson*** because clerk produced "actual bill of costs").

Appellant next makes a due process argument to challenge the timeliness of the bill of costs. Specifically, he argues that by not having a timely bill of costs, he "had no ability to challenge any legal basis for the court costs assessed. . . ." The record was supplemented with the bill of costs on November 2, 2012. Appellant filed his brief on March 1, 2013, and challenges the sufficiency of the evidence supporting the trial court's assessment of costs. Thus, Appellant was not deprived of his right to due process. *See **Cardenas v. State***, No. 01-11-01123-CR, 2013 WL 1164365, at \*7 (Tex. App.—Houston [1st Dist.] Mar. 21, 2013, no pet.) (not yet released for publication) (holding that clerk's failure to prepare bill of costs before entry of judgment does not amount to a due process violation). Accordingly, we overrule Appellant's timeliness and due process arguments.

## Sufficiency of Evidence Supporting Court Costs

A challenge to the sufficiency of the evidence supporting court costs is reviewable on direct appeal in a criminal case. *See **Armstrong v. State***, 340 S.W.3d 759, 767 (Tex. Crim. App. 2011). We measure sufficiency by reviewing the record in the light most favorable to the award. ***Mayer v. State***, 309 S.W.3d 552, 557 (Tex. Crim. App. 2010); ***Cardenas***, 2013 WL 1164365, at \*6. Requiring a convicted defendant to pay court costs does not alter the range of punishment, is authorized by statute, and is generally not conditioned on a defendant's ability to pay. *See* TEX. CODE CRIM. PROC. ANN. art. 42.16 (West 2006); ***Armstrong***, 340 S.W.3d at 767; *see also **Johnson***, 2013 WL 3054994, at \*3.

Some court costs, such as attorney's fees, may not be assessed against a defendant if he was found indigent because his indigence is presumed to continue throughout the remainder of the proceedings "unless a material change in [his] financial circumstances occurs." *See* TEX. CODE CRIM. PROC. ANN. art. 26.04(p) (West Supp. 2012). If a trial court does not make a determination that a defendant's financial circumstances materially changed that is also supported by some factual basis in the record, the evidence will be insufficient to impose attorney's fees as court costs. *See* TEX. CODE CRIM. PROC. ANN. arts. 26.04(p), 26.05(g) (West Supp. 2012); ***Mayer***, 309 S.W.3d at 553; ***Wolfe v. State***, 377 S.W.3d 141, 144, 146 (Tex. App.—Amarillo 2012, no pet.).

**Discussion**

  We have already stated that the trial court's judgment and the clerk's bill of costs assess the same amount of court costs. We have reviewed each of the fees listed in the bill of costs. Except for the item listed as "attorney fees," all costs and fees are authorized by statute.

  The State concedes that the assessment of $300.00 in attorney's fees is improper. The record shows that the trial court found Appellant indigent, continued its finding at the conclusion of the sentencing hearing, and appointed counsel to represent him on appeal. There is no evidence in the record to rebut the presumption that Appellant's indigence continued throughout the remainder of the proceedings, or that the trial court determined that Appellant had the ability to pay attorney's fees. *See* TEX. CODE CRIM. PROC. ANN. arts. 26.04(p), 26.05(g); *Wolfe*, 377 S.W.3d at 144, 146. Consequently, the evidence is insufficient to support the imposition of attorney's fees as court costs. The evidence is sufficient, however, to support the imposition of $329.00 in court costs. We sustain Appellant's second and third issues in part.

**DISPOSITION**

  Having overruled Appellant's first issue and sustained Appellant's second and third issues in part, we modify the judgment of the trial court to reflect that the amount of court costs is $329.00. We *affirm* the judgment of the trial court *as modified*.

**JAMES T. WORTHEN**
Chief Justice

Opinion delivered July 31, 2013.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*

(DO NOT PUBLISH)

9



# COURT OF APPEALS

## TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**JULY 31, 2013**

## NO. 12-12-00271-CR

**DANNY LEE PORTER,**
Appellant
V.
**THE STATE OF TEXAS,**
Appellee

---

Appeal from the 114th Judicial District Court
of Smith County, Texas. (Tr.Ct.No. 114-0515-12)

---

THIS CAUSE came on to be heard on the appellate record and the briefs filed herein; and the same being inspected, it is the opinion of the Court that the judgment of the trial court below should be **modified and, as modified, affirmed**.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the trial court below be **modified** to reflect that the amount of court costs is $329.00; **and as modified**, the judgment of the trial court is **affirmed**; and that this decision be certified to the trial court below for observance.

James T. Worthen, Chief Justice.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*

10