

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

---

No. 07-18-00344-CR

---

DOYLE ATTEBURY AKA DOYLE ATTEBURY, JR., APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

---

On Appeal from the County Court at Law No. 1
Lubbock County, Texas
Trial Court No. 2017-490,646, Honorable Mark Hocker, Presiding

---

May 13, 2019

## MEMORANDUM OPINION

Before QUINN, C.J., and CAMPBELL and PIRTLE, JJ.

Appellant, Doyle Attebury aka Doyle Attebury, Jr. appeals his theft conviction by contending the evidence was insufficient to support his conviction. We affirm.

*Background*

David Brackett, the manager of United Refrigeration, testified that he sells heating, air-conditioning and refrigeration parts and equipment. One item United Refrigeration usually sells is refrigerant which is sold in 24 to 110-pound cylinders. The product is delivered to United Refrigeration with its name on it and the designation "B-3."

On May 12, 2017, Brackett was working at the store comparing the quantity of refrigerant in the store against "the balance sheet." While doing this, he noticed the shrink wrap on one pallet of refrigerant "busted, and one was missing."

Brackett suspected that appellant may have been the person who had stolen the item. The reason underlying his suspicion involved appellant's presence in the store the previous day for a longer period of time than usual. This led Brackett to inspect appellant's pickup which happened to be outside the store. In the back of the vehicle was the missing refrigerant. He knew it was the missing product since it contained the B-3 store identification number on the box. The coolant he discovered there consisted of a "50-pound jug of 22 . . . [and] sold . . . for around 955 to $975." He returned to the store and questioned appellant. According to Brackett:

> I walked up to him and asked him, I said, 'Is that your 50-pound refrigerant in the back of your truck?' And he said, 'Yes, it is.' I said, 'Where did you get it?' And he said, 'Well, I'm not for sure, because my part-time got it somewhere.' I informed the -- if I can go on, I informed the man that, well, that jug of refrigerant was our store brand. It's come out of my warehouse, and had my store number on it, and I was missing one that had been stolen from my warehouse.

Appellant "didn't say anything." Bracket then told appellant he was going to the police and left to make the call. Appellant left while Brackett was on the phone. Once the police arrived, Brackett gave them a statement regarding the theft. Bracket also checked with the other employees and store records and discovered that no customer had purchased the particular sized bottle of refrigerant found in appellant's truck from the store in about a year.

Later in August of the same year, the police recovered a cylinder of refrigerant after receiving a phone call from appellant's mother who had reported that the stolen property

was in her garage. The police took the cylinder to Brackett in order for him to identify it as his. He was able to recognize it even though it was no longer in the box. First, it was the brand of refrigerant that United Refrigeration sold, "National." According to Brackett no one else sold the National brand in Lubbock. Next, the number sequence on the refrigerant "was fairly close sequence of the ones [he] had in stock." Because some of the refrigerant had been used and therefore "not a full jug," he would have to check with the corporate office on what to do with it, but he would be unable to sell it out of his store. The actual code located on the jug and testified to by Brackett was WC 401998. This code is placed on there by the bottlers when it's filled up, according to the witness. Accordingly, this set of numbers was used by Brackett to identify his property because they were close in sequence to the jugs he had in inventory. Finally, Brackett stated that appellant did not have permission to take the refrigerant. On cross examination, Brackett admitted that appellant had been a customer of the store for several years. In regards to the serial numbers, he admitted that they are not logged in anywhere and does not have the numbers as part of an inventory back-up. Furthermore, if he fails to keep track of his inventory, he is fined.

Appellant's mother testified that she had contacted the police about appellant. In August of 2017, she was moving from her home and found that her son had left some property in her garage. He had placed it there in late summer of 2017. She had asked him to remove the property but that he never did. She called the police because she believed the property, a tank of refrigerant, had been stolen. The police determined that the property had been stolen and took custody of it. She did not recall telling the police that her son had been arrested for the theft.

3

Lloyd Rampy, a City of Lubbock police officer, stated that he had received a call regarding stolen property on August 14, 2017. The caller was appellant's mother. According to the officer, "she said that her son, [appellant], was in jail at the time and believed that he was involved in a theft case, and that he had left some property in her garage, and she believed that it was stolen." He recovered the stolen item in the garage which he described as a green refrigerant tank. The officer conferred with the detective handling the theft case involving the stolen refrigerant, and confirmed it was a match with that which was stolen from Brackett. He, then, contacted the victim and went to his business where Brackett verified it was his tank. Furthermore, the officer went to Brackett's warehouse where he was shown similar tanks. The officer was shown "serial numbers or [some] identifying marks that were similar to [the] tank that was stolen." He recalled "the last digits of the numbers of the tanks that he [Brackett] had ended in 199C, and 200B [and] [t]he numbers on the tank that [he] recovered, the last numbers on it were 199 -- yes, 199."[1] The State, then, rested its case.

Appellant testified the he knew Brackett and that he had been in United Refrigeration "[t]housands of times." He went into the store to buy supplies for his business and sometimes his employees did. However, he had not been back to the store after they had accused him of stealing the refrigerant. According to appellant, he did not steal the refrigerant even though it was found in his truck the day following the theft. Appellant admitted to being in the store on May 11th (the day before the theft was discovered) to wait on one of the employees, Heath Allen, to go to lunch. However,

---

[1]We note that earlier in the testimony given by Brackett, he testified that the serial number on the tank taken from appellant's mother's garage was WC 401998. However, in viewing State's exhibit 7 of the same tank, the serial number shows to be WC4199B.

4

according to appellant, Heath could not go so he left and returned the following day. He returned to the store because Heath was "working on a bid" for some equipment to be used in a job. When asked why he left when Brackett told him he was calling the police, appellant thought Brackett was joking, and he had to be in San Angelo which he was already two hours late. In regards to the refrigerant being found in his truck, appellant stated that he had

> hired a guy, his name was Steven Martinez. And he only worked for me for a few days, but I sent him to get a jug of refrigerant the day before, which I had Heath actually do a bid on that too, and a few other things for a job that I had to do. And I was running out of time to get that before -- I had to do it first thing in the morning. So I said, will you go grab that stuff. I gave him the money, and he left and came back. He was going to bring it up on the roof later on at Church's on 82nd and University. I told him to just throw it in the back of the truck, because we didn't need it on that roof. He took it out of the truck and was going to bring it up on the roof. And I told him, just throw it in the back of the truck. We don't need it up here. It was for the job in the morning, not that one. The only reason I sent him is because it was like at 4:30, and they close at 5:00. And I needed it for the next morning at 6:30.

A few months later, appellant was arrested on a theft warrant. This surprised him because he was unaware that he had an active arrest warrant. He answered in the affirmative to the question of whether he had taken several bottles of refrigerant to his mother's garage in the past due to limited space at his place.

After the defense rested, the State called a rebuttal witness, Heath Allen. Allen stated that he had worked for United Refrigeration for twelve years. He knew appellant as a customer of the store for nine years. On May 11, 2017, Allen remembered appellant coming into the store "around 1:30, 2:00." At that time there were a few other customers in the store along with Allen and another employee who was behind the counter waiting

5

on customers. When appellant came in, appellant allegedly "needed a cigarette, got one out of [Allen's] bag from behind the counter, and went out back to smoke it." Allen was not sure exactly where appellant went when he left from the store. By the time Allen was finished with the customer it had been approximately 15 to 20 minutes and he went to smoke with appellant. When Allen arrived at the warehouse at the back of the store, he observed appellant coming from the second warehouse which he found to be odd since he had no business in that warehouse. The second warehouse is where they kept some tanks of 50-pound R-22 refrigerant on pallets in shrink wrap. Allen did not observe appellant carrying anything, nor did he write a ticket for appellant for the purchase of a 50-pound container of R-22. According to Allen, the tanks had to be counted every week, and if appellant or his employee had purchased one the day before there would be a record of it. There was not. Furthermore, he did not know Steve Martinez and had not sold him the R-22 refrigerant. Allen also said that he had never known appellant to purchase a 50-pounds. tank of R-22 refrigerant.

On the day Brackett discovered coolant was missing, Allen thought it was "very rare that people even get near those, let alone somebody -- come up missing." Records were checked to make sure it had not been sold and none were found manifesting a sale. Appellant came back into the store approximately 20 minutes after the discovery of the missing tank. According to Allen, Brackett confronted appellant about the coolant being in the back of his truck. He described the conversation as "intense," and did not believe that Brackett was joking with appellant. Allen stated that appellant responded with "Oh, shit." "And he stood there for a few minutes and then walked out our back door." He appeared nervous.

After the close of evidence, the jury found appellant guilty of a Class A Misdemeanor Theft.

*Issue – Sufficiency of the Evidence*

In his sole issue, appellant contends that he could not have appropriated the alleged stolen property during the time it was alleged to have been stolen. In his view, he could not have gone into the warehouse, taken the 50-pound tank out of the warehouse without being seen, taken it to his vehicle which was parked in front of the store and returned to the warehouse in time for Allen to see him leaving the warehouse. Appellant also contends that the tank was not recovered with a box bearing the store's mark, no witness specified the methodology behind the code numbers on National brand R–22, and no one confirmed the full sequence of each of the tank numbers; thus, a jury could not reasonably infer that the combination of letters and numbers on only two tanks meant the recovered tank belonged in that lot. He adds that there is little evidence of his intent to deprive United Refrigeration of its property. Finally, the evidence allegedly does not establish, as a matter of law, that appellant appropriated the tank himself, and the State did not plead that he unlawfully received stolen goods. So, the evidence was insufficient to support his conviction.

To evaluate the sufficiency of the evidence an appellate court must view the evidence in the light most favorable to the prosecution and ask whether any rational trier of fact could have found each element of the offense beyond a reasonable doubt. *Musacchio v. United States*, __U.S. __,__, 136 S. Ct. 709, 715, 193 L. Ed.2d 639 (2016); *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *Ramsey v. State,* 473 S.W.3d 805, 808 (Tex. Crim. App. 2015). Appellate review "does not intrude

7

on the jury's role 'to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.'" *Musacchio*, 136 S. Ct. at 715 (quoting *Jackson*, 443 U.S. at 319). Additionally, legally sufficient evidence need not exclude every conceivable alternative to the defendant's guilt, *Ramsey*, 473 S.W.3d at 811, and the law requires no particular type of evidence. Direct and circumstantial evidence are equally probative, and "circumstantial evidence alone can be sufficient to establish guilt." *Johnson v. State*, 560 S.W.3d 224, 226 (Tex. Crim. App. 2018) (citing *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007)). While each fact need not point directly and independently to the guilt of the accused, the cumulative force of circumstantial evidence alone may be sufficient to support a conviction. *Cordova v. State*, 296 S.W.3d 302, 308 (Tex. App.—Amarillo 2009, pet. ref'd).

To secure the conviction before us, the State had to prove that appellant unlawfully appropriated the refrigerant with the intent to deprive the owner of it. TEX. PENAL CODE ANN. § 31.03(a) (West 2019) (stating the elements of theft). An appropriation is unlawful if, among other things, it is without the owner's effective consent. *Id* § 31.03(b)(1). Furthermore, to appropriate means, among other things, to acquire or exercise control over property. *Id.* § 31.01(4)(B).

At bar, the evidence showed that the refrigerant was found missing on May 12th, the day after appellant was in the store and seen exiting the warehouse where it was stored. Also, on the 12th, appellant returned to the store with the missing refrigerant in the bed of his truck. The owner identified the product in appellant's truck as that missing from the store and did so by store identification number, brand of refrigerant, and the manner of packaging. When confronted by store personnel, appellant said "oh shit," left

the store, and drove away with the very refrigerant the store owner accused him of stealing without having paid for it. The item was later found in the garage of appellant's mother who said appellant had left it there.

An accused's presence at the scene of a crime and flight therefrom are two circumstances indicative of guilt, even though they might not alone be sufficient to sustain a conviction. *Livingston v. State,* 739 S.W.2d 311, 330 (Tex. Crim. App. 1987). Here, appellant left when informed that the police were being called, and he never returned to the establishment despite having been a regular customer before the incident.

Again, each bit of circumstantial evidence by itself need not directly and independently prove guilt; the cumulative force of all the circumstances need only establish guilt. *Beardsley v. State*, 738 S.W.2d 681, 685 (Tex. Crim. App. 1987); *Ortiz v. State*, 930 S.W.2d 849, 852 (Tex. App.—Tyler 1996, no pet.). The cumulative force of the evidence here was sufficient to enable a rational fact-finder to conclude, beyond reasonable doubt, that appellant himself committed theft of the refrigerant. Our conclusion relieves us from having to address his remaining arguments.

The judgment of the trial court is affirmed.


Per Curiam